*In re* ESTATE OF MALISSA M. BERRY, Deceased (John Berry *et al.*, Petitioners-Appellants, v. Tessie Warnes *et al.*, Respondents-Appellees).

Fourth District    No. 4—87—0730

Opinion filed May 26, 1988.

Jerome P. Lyke, of Hatch, Blockman, McPheters, Fehrenbacher & Lyke, of Champaign, for appellants.

William A. Sunderman and Brian L. Bower, both of Brainard, Bower & Kramer, of Charleston, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On February 19, 1985, petitioners John Berry and C. E. Berry filed a petition in the circuit court of Douglas County contesting the validity of the codicil to a will of Malissa M. Berry. The codicil and the will had been admitted to probate on June 19, 1984. The petition was based on allegations the decedent lacked testamentary capacity to execute the codicil and did so under the undue influence of respondent G. R. Enright. Following a jury trial, the court entered judgment on July 24, 1987, on a verdict upholding the validity of the codicil.

Petitioners have appealed contending the court erred in (1) refusing testimony offered; (2) refusing petitioners sufficient discovery; and (3) quashing a notice directing a respondent to appear. Respondents deny any error occurred and contend the giving of an instruction unduly favorable to petitioners cured any error. We disagree and hold the circuit court's refusal of certain evidence offered by petitioners requires reversal and remandment for a new trial.

The parties to the proceedings are all of the heirs, devisees, and legatees of the decedent. Petitioners John and C. E. Berry are her sons, as is respondent Harvey Berry. Respondent Tessie Warnes is her daughter. Each of the four received a one-sixth share of her estate under her will. Respondent G. R. Enright is a grandson, the only child of the decedent's deceased daughter Sue. He also received a one-sixth interest in the estate under the will. Respondents Nancy Berry and Jannie Kocevar are granddaughters, the only children of decedent's deceased son Kenneth Berry. They each received a one-twelfth interest in the estate under the will.

The will was executed November 2, 1981, and its validity is not in issue. The dispute concerns the codicil dated March 14, 1982. The codicil designated respondent Enright as executor. Petitioner C. E. Berry was named executor under the will. The other substantial provision of the codicil was quite unusual. It recited that in December 1980, petitioner C. E. Berry, then decedent's "attorney in fact" paid from her funds as gifts the sum of $3,000 each to himself and to her other then living children without her consent. The codicil then stated she requested each to return the gift without interest. The codicil then indicated those who did not return the $3,000 before her death would be entitled to nothing under her will and their share would be apportioned among the remaining heirs. The evidence indicated that, not knowing of the existence of the codicil, C. E. Berry and John Berry had not repaid their $3,000 distribution. Thus, if the codicil stands, they take nothing and the share of the respondents, including

Enright, would be substantially enhanced.

The codicil was drafted by G. R. Enright, who mailed it to Janice Berry, daughter-in-law of Harvey Berry. Janice presented the document to decedent, who executed it in the presence of Janice and a friend of Janice's. Two days before the codicil was executed, the decedent had been brought home from a nursing home. Enright testified he drafted the codicil from earlier notes he had made during a discussion with decedent. He admitted he had been "attorney in fact" for decedent since September 24, 1981. He also stated the decedent had become upset because C. E. Berry, who had her power of attorney, had written the checks later described in the codicil. Enright's testimony was confusing as to decedent's motivation for the scheme in regard to the $3,000 distributions. His testimony indicated the decedent had said she did not want the children to know of the codicil but was apparently testing them to see what they would do. Enright's testimony indicated decedent was displeased with C. E. Berry's additional distribution of $20,000 from her estate at a time when she needed funds. Enright also testified that before he drafted the codicil, he asked all four of decedent's children to return the $3,000 given to each of them but only Harvey Berry and Tessie Warnes did so.

Janice Berry and Anne Eddington, a granddaughter of decedent's, testified corroborating Enright's statements in regard to the decedent's displeasure at the disbursement of the $12,000. Janice Berry also stated decedent, immediately prior to her death, owned 36-acre and 80-acre tracts of farmland, which were farmed by Janice's husband and father-in-law, and a two-story home. According to Janice, the decedent received a sum somewhat in excess of $300 per month from social security. Janice indicated decedent liked to make gifts. This was corroborated by Mary Lois Jackson, who saw decedent frequently before her death and who described decedent as generous, loving, forgiving and not vindictive.

The most serious question in regard to the trial court's refusal of testimony offered by petitioners concerns the court's sustaining an objection of an offer of proof of the testimony of Chester Keller, an attorney. Enright admitted Keller was present at the execution of decedent's will on November 2, 1981. In the offer of proof, Keller testified to an opinion that, *at the time of the execution of that will*, decedent did not know the extent and value of her property and was not competent to make the will. He also testified the decedent's statements at that time indicated the decedent had no desire for the return of the four $3,000 disbursements or for interest on a $20,000 disbursement made to Linda Berry. He testified that the $20,000 disbursement was

considered a loan and not a gift, and $5,000 had been repaid. The offer of proof also included testimony of Keller that John Berry and C. E. Berry had each given him $3,000 to make repayment to the decedent but Enright, acting as her attorney-in-fact, refused to accept it unless those two sons also paid Tessie Warnes' $3,000. According to Keller, John and C. E. Berry refused to do so.

■■ ■ The offer of proof was rejected on the basis that evidence of the decedent's mental capacity on November 2, 1981, and the influence which Enright was placing on her on that date, was too remote from March 14, 1982, when the codicil was signed, to bear on the decedent's condition at the time of the execution of the codicil. Respondents correctly point out that for the evidence to be relevant, it must bear on the factors of mental capacity and undue influence existing at the time of the execution of the testamentary document in issue. (*Shevlin v. Jackson* (1955), 5 Ill. 2d 43, 124 N.E.2d 895.) We recognize the existence of substantial discretion in the trial court to determine the time frame within which events concerning the testator are relevant to the capacity of the decedent in a will contest suit. (29 Am. Jur. 2d *Evidence* §253 (1967).) However, we determine the circuit court went beyond the limits of discretion in refusing Keller's testimony.

Testimony of the mental condition of a testator as long as two years prior to the execution of a will has been held to be admissible. (*Voodry v. Trustees of University of Illinois* (1911), 251 Ill. 48, 95 N.E. 1034.) In *Mitchell v. Van Scoyk* (1953), 1 Ill. 2d 160, 115 N.E.2d 226, admission of the testator's infirm condition of nearly 10 months prior to the execution of a will was held not to be error. Here, the time lag between the time of Keller's presence while the uncontested will was executed and the time of the execution of the contested codicil was only approximately 4½ months. In reversing a directed verdict for respondents in a will contest suit, the supreme court held in *Peters v. Peters* (1941), 376 Ill. 237, 33 N.E.2d 425, that some witnesses who would have testified to the mental infirmity of the decedent at an unstated period of time before the execution of the will should have been permitted to testify. The court explained:

"Proof of the mental condition of the testator a reasonable time *before* or after the making of a will may be received where it tends to show mental condition at the time of the execution of the instrument. A mental condition shown to exist *is presumed to continue, if it be of a continuous nature.* [Citation.]" (Emphasis added.) *Peters*, 376 Ill. at 243, 33 N.E.2d at 427.

■■ Dr. Richard Ensrud, M.D., testified by way of evidence

deposition that, during the entire period decedent was at the Americana Nursing Home, beginning in September 1980 until her discharge on March 12, 1982, she suffered from central nervous system arteriosclerosis. He stated decreased mental capacity is a symptom of that condition. Thus, here, as in *Peters*, substantial evidence was presented that the decedent had a continuing and progressive impairment of mental capacity. Any lack of testamentary capacity witnessed by Keller on November 2, 1981, would have been very likely to have continued until March 14, 1982, when the codicil was executed. Keller's testimony in that regard, as supplemented by the testimony of Dr. Ensrud, was highly relevant, and reversible error resulted from its exclusion.

Respondents did present substantial testimony from several witnesses that decedent was aware of the natural objects of her bounty and the extent of her wealth around the time of the execution of the codicil. Such testimony was presented by Ruth Denny and Janice Berry, witnesses to the execution of the codicil. In addition, Anne Eddington, Malissa Berry's granddaughter, Pauline Schroeder, Malissa Berry's home nurse following her discharge from the nursing home, Hazel Gosnell, a friend and neighbor of Malissa Berry's, and Carol Morgan, a social worker at the Americana Nursing Home, all testified that Malissa Berry appeared to be aware of her family members and aware of the nature and extent of her wealth. However, that proof was not overwhelming and would have been far from overwhelming if Keller's testimony had been admitted.

In addition to providing evidence of the decedent's lack of testamentary capacity, Keller's testimony also tended to impeach that of Enright and to show the existence of undue influence. He refuted Enright when he stated that the decedent had no desire for the return of the various $3,000 disbursements or for interest on the sum of $20,000 which had been disbursed by C. E. Berry to his wife while serving as decedent's agent. The evidence that Enright refused offers of payback of $3,000 from John and C. E. Berry unless they paid Tessie Warnes' share could be taken to indicate Enright had persuaded the decedent to execute the codicil to further a scheme of his to get John and C. E. Berry eliminated from participating in the decedent's estate. See *Peters v. Fekete* (1928), 329 Ill. 268, 160 N.E. 594.

Petitioners maintain the prejudice to them from exclusion of Keller's testimony was aggravated because the court let in testimony of respondents concerning matters involving the decedent which were nearly as remote in time as that testified to by Keller. We need not consider this contention as we have found reversible error occurred

regardless.

The trial court also refused to permit petitioners' offer of testimony of Janice Berry that she and her husband purchased 38 acres of farmland from the decedent in July 1984, some four months after execution of the codicil, for $1,000 per acre and that this was well below market value. The court also refused evidence that the proceeds of the sale were sent to Enright, who has not accounted for them or for social security benefits the decedent was receiving.

■ While matters occurring after the execution of a testamentary document may be admissible to show the mental incapacity of a testator (*Peters v. Peters* (1941), 376 Ill. 2d 237, 33 N.E.2d 425), the relevancy is not as clear. The mental condition of an elderly person with arteriosclerosis is much more likely to stay the same or get worse over a period of time than it is to improve. (See *Eschmann v. Cawi* (1934), 357 Ill. 379, 192 N.E. 226; *Todd v. Todd* (1906), 221 Ill. 410, 77 N.E. 680.) Thus, the decedent could well have been competent to execute the codicil but later lack capacity to make a reasonable sale of the farmland. We do not hold the trial court to have breached its discretion in refusing evidence of the subsequent sale of the farmland. The refusal of evidence of Enright's failure to account was also within the court's discretion.

The trial court denied petitioners' request to require Enright to answer interrogatories in regard to his handling of the decedent's affairs. We cannot predict what the situation in regard to the available information in that respect will be on retrial. However, in ruling on further discovery in this respect, the court should recognize that material may be timely in regard to being subject to discovery, even though the court might have discretion to exclude that evidence because it concerns matters too remote in time to have sufficient relevancy to be submitted to the trier of fact.

Petitioners further contend error resulted from the court's refusal to admit into evidence the testimony of Dr. Ensrud in regard to three questions asked at the time of the taking of his evidence deposition. The three questions are:

"So, Doctor, in your opinion, to a reasonable degree of medical certainty, would the conditions which you testified to of the CNS, Arteriosclerosis and the weakness, might those conditions—might or could those conditions tend to affect Mrs. Berry's ability to understand the terms of a legal document?"

"Also, in your opinion, Doctor, to a reasonable degree of medical certainty, might or could these conditions of arteriosclerosis and weakness tend to affect Mrs. Berry's ability to under-

stand what property she owned and what it was worth?"

"Also, Doctor, to a reasonable degree of medical certainty, in your opinion, would these conditions of weakness and arteriosclerosis tend to affect Mrs. Berry's judgment as to who might be deserving or undeserving recipients of property according to her will?"

■■ As to the first question, an objection eventually made before the court concerned the use of the words "legal document." The court did not say whether the document was complicated or simple. The fact the document has legal significance has little bearing on the testator's capacity. While this objection was not made when the deposition was being taken, the infirmity in the question is not one which could have been cured when the deposition was taken. Thus, the waiver which results when an objection of that nature is not made at the time of the taking of the deposition did not arise here. (See 107 Ill. 2d R. 211(c)(2).) The court did not err in sustaining the objection to this question.

■■ The objections to the other questions concerned the failure of the witness to first state whether he had an opinion, the lack of foundation for the question, and the theory that the abilities of the testator about which the question was asked are not elements of testamentary capacity. We need not consider the waiver issue here because we conclude the questions were proper. The questions inferred a question as to whether the doctor had an opinion. Better form would have required an answer to that question first. A foundation was supported when the doctor testified to having examined the decedent every few months over a two-year period. The question concerning whether decedent understood "the property she owned and its worth" spoke to the element of her knowledge of the nature and extent of her property. The language in regard to who were "the deserving recipients of her property" spoke to the issue of her knowing the natural objects of her bounty. The court erred in sustaining objections to these questions.

Petitioners assert error resulted when the trial court quashed a subpoena for Tessie Warnes. Some question arose as to her competence to testify and her ability to do so. We need not go into that issue. If any similar question arises on retrial, the court will have to rule upon the basis of the record before it at that time.

■■ Respondents' theory that any error in the court's refusal to allow evidence offered by petitioners was cured by the court's giving of an instruction arises from the court's giving the jury, at petitioners' request, Illinois Pattern Jury Instructions, Civil, No. 200.03 (2d ed.

1971). This instruction concerns the presumption of undue influence which arises when one, such as Enright, having a fiduciary relationship with another, receives a benefit from a transaction with that person. The instruction permits the jury to determine whether the presumption has been overcome. As pointed out by respondents, in *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872, the bursting bubble theory of presumption enunciated in *Diederich v. Walters* (1976), 65 Ill. 2d 95, 357 N.E.2d 1128, was applied to the presumption concerning undue influence. The combined effect of those two decisions is to place the responsibility of determining whether the presumption has been overcome on the court. Where, as here, the party charged with undue influence is a lawyer, the presumption can only be overcome by clear and convincing evidence. (*Franciscan Sisters*, 95 Ill. 2d at 465, 448 N.E.2d at 878.) If the presumption is not overcome, the court must instruct the jury to reach the factual conclusion arising from the presumption if the jury finds the facts giving rise to the presumption. On the other hand, if the presumption is overcome, the case proceeds without reference to the presumption. *Diederich*, 65 Ill. 2d at 101-02, 357 N.E.2d at 1131.

■ Regardless of whether the giving of the instruction gave petitioners the benefit of an unduly favorable instruction, we cannot weigh that benefit against the prejudice incurred by petitioners in denying them the benefit of Keller's offered testimony. We cannot say that, absent the instruction and with Keller's testimony, the jury verdict would have been the same.

Accordingly, we reverse the judgment entered on the verdict and remand to the circuit court of Douglas County for a new trial.

Reversed and remanded.

LUND and SPITZ, JJ., concur.