In re MARRIAGE OF FRANCINE CHEGER, Petitioner-Appellee, and DAVID M. CHEGER, Respondent-Appellant.

Fourth District   No. 4—90—0579

Opinion filed May 9, 1991.

Gary R. Thompson, of Bloomington, for appellant.

Don C. Hammer, of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The marriage of David M. Cheger and Francine Cheger was dissolved on May 1, 1990. Respondent David M. Cheger appeals the judgment of dissolution and raises issues concerning the award of maintenance, distribution of property, and order for attorney fees. We affirm.

Only those facts necessary to a resolution of the issues raised will be recited.

On March 3, 1989, petitioner Francine Cheger filed a petition for dissolution of marriage on the grounds of respondent's adultery. On March 10, 1989, respondent denied the allegations of adultery and filed a counterpetition for dissolution on the grounds of mental cruelty. Petitioner denied the allegations in the counterpetition. On August 17, 1989, respondent amended his response to petitioner's petition and admitted committing adultery while married to petitioner. The trial court ordered the dissolution of marriage on the grounds of mental cruelty.

Respondent and petitioner, both age 37 at the time of the initiation of the dissolution proceedings, were married on November 22, 1975.

One child, Justin, was born to the parties during the marriage and he was 10 years old at the initiation of these proceedings. Petitioner was awarded custody of Justin, and respondent was ordered to pay $1,000 a month in child support. Respondent does not challenge the custody or child support orders.

Throughout most of their marriage, the parties together operated a retail carpet business in Bloomington known as Floor Covering Associates of Bloomington, Inc. (FCA). Respondent was the president of FCA; petitioner was the corporate secretary. Petitioner, who received an associate degree in accounting in 1972, was employed in the accounting department of FCA from 1977 until March 1989 when respondent terminated her employment. While employed at FCA, petitioner's duties included advertising, and the overseeing of the accounting department. Petitioner was in charge of auditing the bank statements for FCA accounts and had authority to hire and fire persons in the accounting department. Prior to and while working at FCA from 1976 to 1980, petitioner was also employed as an office manager for another business where she was responsible for the bookkeeping. There, petitioner received a salary of $15,000 per year. Petitioner's salary at FCA when she was terminated in 1989 was $5,200 per year. In previous years, petitioner received a salary of $2,500 to $3,000 a year which was used to fund an IRA account for petitioner. Petitioner worked 30 to 32 hours per week in the last two years of employment at FCA. Following her termination by respondent, petitioner did not apply for any other jobs. At the time of the final hearing on the dissolution petition, petitioner was enrolled as a student at Illinois State University (ISU). Petitioner entered ISU after the dissolution petition was filed, and at the time of the final hearing in this case, she had completed six credit hours of course work and was then taking courses totalling 10 credit hours for a degree of speech communications or business. Petitioner testified she did not know how long it would take to complete her studies. Petitioner also stated she believed she could not obtain employment comparable to the job she held at FCA without completing her education. Petitioner has no physical or mental disabilities.

Respondent established his own salary and had received $22,000 to $24,000 per year as president of FCA. In addition, respondent received commissions and he determined the amount and time of taking of the commissions. The parties leased property to FCA and received monthly lease payments in the amount of $4,776 before November 1, 1989, and $6,250 after November 1, 1989. Respondent had full use of a Cadillac, a van, and another vehicle at the expense of FCA. Respond-

ent also received in excess of $24,000 in reimbursements from FCA from January through November 1989. The reimbursements represented business and personal expenses of respondent.

The parties stipulated that the following is a list of all marital assets except FCA and their values:

| ITEM | VALUE |
|---|---|
| 3005 Gill Street Bloomington, Illinois | $232,500.00 |
| 2612 Hall Court Bloomington, Illinois | $102,500.00 |
| 15300 Bells Bay Charlevoix, Michigan | 30,000.00 |
| Sarasota time share | 3,500.00 |
| 45-foot Starratt yacht | 77,500.00 |
| 210 Cessna airplane | 56,500.00 |
| 1984 Cadillac | 8,000.00 |
| Mercedes 280SL | 27,000.00 |
| 1979 Dodge van | 1,500.00 |
| 1982 Kawasaki motorcycle | 1,000.00 |
| Snowmobile | 200.00 |
| Husband's IRA | 56,380.00 |
| Wife's IRA | 24,717.00 |
| Phone System | 1,000.00 |
| Computer | 1,500.00 |
| Personal property at 2612 Hall Ct. | 13,500.00 |
| Cash | 12,000.00 |
| TOTAL | $649,297.00 |

The marital debts were found as follows:

| | |
|---|---|
| Mortgage on Gill Street property | $ 86,873.14 |
| Mortgage on Hall Court property | 18,012.22 |
| Debt on plane | 23,093.77 |
| Debt on Mercedes | 7,765.00 |
| TOTAL | $135,744.13 |

In her financial affidavit, petitioner stated she had no monthly income and her expenses were $3,655. This figure includes the monthly mortgage payment on the Hall Court property ($450) and the monthly car payment for the Mercedes ($430). Respondent stated his monthly gross income was $7,850 and his monthly expenses were $6,629, which included the monthly payments on all the marital debts as listed above ($3,289), the child support and temporary maintenance respondent was paying petitioner in the total amount of $2,250, and respondent's other monthly expenses in the amount of $1,090.

The trial court divided the marital property as follows:

|                     | Respondent     | Petitioner    |
|---------------------|----------------|---------------|
| Gill Street         | $232,500.00    | 0.00          |
| Hall Court          | 0.00           | $102,500.00   |
| Bells Bay           | 30,000.00      | 0.00          |
| Sarasota time share | 0.00           | 3,500.00      |
| Yacht               | 77,500.00      | 0.00          |
| Airplane            | 56,500.00      | 0.00          |
| Cadillac            | 8,000.00       | 0.00          |
| Mercedes            | 0.00           | 27,000.00     |
| Dodge van           | 1,500.00       | 0.00          |
| Motorcycle          | 1,000.00       | 0.00          |
| Snowmobile          | 200.00         | 0.00          |
| IRA's               | 0.00           | 81,097.00     |
| Phone system        | 1,000.00       | 0.00          |
| Computer            | 1,500.00       | 0.00          |
| Personal property   | 0.00           | 13,500.00     |
| Cash                | 0.00           | 12,000.00     |
| FCA Stock           | 260,000.00*    | 0.00          |
| TOTAL               | $669,700.00    | $239,597.00   |

Respondent was ordered to pay all the marital debts and to pay $150,000 to petitioner in three installments as follows: $55,407.85 by August 1, 1990; $50,000 by July 1, 1991; and $50,000 by July 1, 1993. The first installment includes $5,407.85 in additional and unenumerated payments required to be paid by respondent to petitioner. Al-

---

*Book value as established by petitioner through expert testimony.

though not listed by the trial court in its order, the $5,407.85 represents a reimbursement to petitioner for attorney fees paid by FCA on respondent's behalf and educational expenses petitioner paid ISU for her education. The court also ordered respondent to pay petitioner $2,500 a month in rehabilitative maintenance from May 1, 1990, through April 1, 1993; $1,500 per month from May 1, 1993, through April 1, 1996; and $1,000 per month thereafter until April 1, 2000.

On November 29, 1989, petitioner filed a motion under Supreme Court Rule 137 (134 Ill. 2d R. 137) for sanctions and attorney fees against respondent for the false pleading respondent filed in response to petitioner's dissolution petition. Petitioner presented evidence that she incurred additional attorney fees in the amount of $4,072.55 on account of the false pleading. The trial court ordered respondent to pay the $4,072.55 in attorney fees for petitioner.

Respondent's motion for reconsideration of the judgment was granted in part but concerned issues not raised in this appeal.

Respondent first contends the award for rehabilitative maintenance to petitioner for 10 years is contrary to the evidence and the law. Respondent points to the fact that petitioner worked throughout their marriage in management positions as evidence that petitioner has present ability to obtain "very appropriate employment" to meet her reasonable needs. Respondent argues petitioner made no showing that additional education would assist her in obtaining employment. Respondent further argues the maintenance award should be reversed because petitioner only asked for maintenance for five years with a review at the end of five years. Given the marital property awarded to petitioner, respondent contends she will have more than enough assets to meet her monthly expenses. Respondent also argues the trial court did not properly consider respondent's ability to pay maintenance.

■■ Section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 504) directs a court may grant maintenance only if it finds the spouse seeking maintenance:

"(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income." (Ill. Rev. Stat. 1989, ch. 40, par. 504(a).)

Section 504 further provides that the amount of the maintenance order and the period during which maintenance is to be paid shall be determined after the court considers all relevant factors, including:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties;

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) the tax consequences of the property division upon the respective economic circumstances of the parties." (Ill. Rev. Stat. 1989, ch. 40, par. 504(b).)

In authorizing rehabilitative maintenance, the Act aims to provide incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.) This goal, however, must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 464-65, 426 N.E.2d 1087, 1096.) The propriety of a maintenance award as well as the amount and duration thereof are matters which lie within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (*In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 851, 551 N.E.2d 737, 744.) An abuse of discretion occurs where no reasonable man would take the view adopted by the trial court. *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 916, 466 N.E.2d 925, 933, citing *In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 436 N.E.2d 228.

■ In light of the factors set forth in section 504, we conclude the maintenance award is supported by the evidence. Prior to the initiation of these proceedings, petitioner worked 30 to 32 hours per week in a very successful family business in a management and book-

keeping position at a salary less than $5,000 per year. Petitioner also had primary responsibility for her son. After the petition for dissolution was filed, petitioner returned to school to continue her education which she stated was needed for her to gain appropriate employment. Respondent presented no evidence to the contrary. Where the court has specific evidence regarding educational background, present educational pursuits, and income at the time of dissolution, there is sufficient evidence to set a specific period of time for maintenance. (*In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300.) Petitioner's desire to return to school to improve her chances for employment distinguishes this case from *In re Marriage of Banach* (1986), 140 Ill. App. 3d 327, 489 N.E.2d 363, which respondent asserts is authority for his argument that petitioner does not need additional training for future employment.

■ The benchmark for a determination of maintenance is the reasonable needs of a spouse seeking maintenance in view of the standard of living established during the marriage, the duration of the marriage, the ability to become self-supporting, the income-producing property of a spouse, if any, and the value of the nonmarital property. (*Bentley v. Bentley* (1981), 84 Ill. 2d 97, 417 N.E.2d 1309.) In her financial affidavit, petitioner stated she had no income and her monthly expenses were $3,655. Disregarding $390 of petitioner's expenses, which are attributable to her son, and $830 which represents debts respondent was ordered to pay, petitioner is still left with $2,435 of debt each month. The parties enjoyed a lavish life-style during their 14-year marriage. With her present educational background, petitioner may be able to obtain employment similar to her bookkeeping position at the other retail business which paid only $15,000 per year. This is far below the standard of living established during her marriage. Respondent's gross income for 1988 was $87,687 while petitioner earned $4,050. Respondent's financial affidavit showed his monthly income, exclusive of commissions, was $7,850. While respondent's monthly expenses, including child support of $1,000 and maintenance of $2,500, amount to $8,710 and exceed his monthly income, respondent has complete control over the amount of his commissions and when he can draw them. The evidence established respondent has the financial resources to meet his needs as well as those of petitioner. Further, respondent will continue to have greater earning power than petitioner.

Respondent argues petitioner has sufficient marital assets which may be invested to provide her support. However, petitioner is not required to sell or impair capital assets to provide for her support where respondent has sufficient income to meet his needs as well as

hers. *In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 234-35, 505 N.E.2d 1294, 1300-01; see also *In re Marriage of Emery* (1989), 179 Ill. App. 3d 744, 750, 534 N.E.2d 1014, 1018; *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1088, 412 N.E.2d 1336, 1344.

■ Respondent also contends the maintenance award should be reversed because the court did not make it reviewable after five years and exceeded petitioner's request for maintenance for five years. In the May 1, 1990, order, the trial court "reserve[d] jurisdiction in this cause for the purpose of entering any Orders required in accordance with the terms contained herein." While receiving maintenance, petitioner has an affirmative obligation to seek appropriate employment and to make a good-faith effort to become financially independent. (*In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 511 N.E.2d 156.) Should petitioner not fulfill her obligations, section 510(a) of the Act directs that the maintenance award may be modified upon respondent's showing of substantial change in circumstances. (Ill. Rev. Stat. 1989, ch. 40, par. 510(a); *Rice v. Rice* (1988), 173 Ill. App. 3d 1098, 528 N.E.2d 14 (rehabilitative maintenance for 42 months may be modified during the period pursuant to section 510(a) upon a substantial change in circumstances).) A substantial change in circumstances may be a change in the ability of petitioner to support herself. (*In re Marriage of Henzler* (1985), 134 Ill. App. 3d 318, 480 N.E.2d 147; see also Ill. Ann. Stat., ch. 40, par. 510(a), Historical and Practice Notes, at 699 (Smith-Hurd 1980).) Thus, while the order did not provide for review of the maintenance award, respondent is not precluded from seeking a review during the 10-year period if there is a substantial change in circumstances. As to the fact that maintenance was awarded for five years beyond the period requested by petitioner, we deem the trial court acted within its discretion in independently determining the amount and duration of the maintenance award.

Next, respondent argues the order requiring him to pay petitioner $150,000 in three installments to equalize the distribution of marital property imposes a financial hardship on him and should be reversed. Respondent contends the transfer of fixed assets from him to petitioner such as the yacht and airplane in lieu of the cash payment would accomplish a nearly equal distribution of property, leaving respondent to pay only $16,000 to fully equalize the property distribution.

Petitioner argues respondent agreed in the proceedings below to the distribution of property as ordered by the trial court and cannot now claim error in the distribution. Petitioner maintains respondent has not demonstrated why he cannot sell some of the marital assets,

such as the plane and yacht, to raise the money needed to pay petitioner or mortgage some of the assets to make the payments.

■■ Section 503(d) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)) provides marital property shall be divided in "just proportions" considering all relevant factors as well as others deemed relevant to the case. (*In re Marriage of Riech* (1991), 208 Ill. App. 3d 301, 308, 566 N.E.2d 826, 830; *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238, 241.) The touchstone of proper apportionment is whether the distribution is equitable, with each case resting on its own facts. (*Hart*, 194 Ill. App. 3d at 847, 551 N.E.2d at 741.) The trial court's discretion in dividing marital property will not be disturbed absent clear abuse. *Riech*, 208 Ill. App. 3d at 309, 566 N.E.2d at 830; *In re Marriage of Cecil* (1990), 202 Ill. App. 3d 783, 790, 560 N.E.2d 374, 378.

■■ As noted, the trial court divided the marital property by allocating a total of $389,597 in assets to petitioner, including the $150,000 cash payment in three installments and $519,700 in assets to respondent. Because respondent is responsible for the marital debts, the net assets he received are $383,955.87. Prior to the final division of assets, respondent proposed he be awarded the yacht and airplane along with other marital assets and that he pay petitioner a cash sum of $103,212 to equalize the division of property. Respondent cannot now claim error in the division of property to which he acquiesced in the trial court. (See *Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 458 N.E.2d 1120 (waiver of errors which were not objected to in the proceedings below).) Further, we find no abuse of discretion in the division of marital property. As we noted previously, respondent has significantly more earning power than petitioner and has sufficient resources to make the cash payments to petitioner as directed.

■■ Next, respondent claims the order requiring him to pay $4,072.55 of petitioner's attorney fees must be reversed because no itemized bill for these fees was submitted, no evidence was presented on the necessity and reasonableness of these fees, and there was no showing of the inability of petitioner and of the ability of respondent to pay these fees. Petitioner contends any argument addressed to the sufficiency of her evidence on attorney fees is waived because respondent did not object at trial. Petitioner argues that while it is unclear whether the fees were awarded under section 508 of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 508) or as a sanction under Rule 137, the evidence supports the award as a sanction and under the Act.

The record shows petitioner presented evidence through testimony and billing statements from her attorneys that between March

and August 1989, she incurred additional attorney fees in the amount of $4,072.55 on account of respondent's false pleading denying his adultery. Respondent did not object to the sufficiency or introduction of the billing statements into evidence. Thus, respondent has waived any issue regarding the sufficiency of the evidence on this issue. *Wade*, 158 Ill. App. 3d 255, 511 N.E.2d 156.

The judgment entered on May 1, 1990, does not reflect whether the $4,072.55 in attorney fees was awarded pursuant to section 508 of the Act or under Rule 137. We conclude the award was proper under the Act and as a sanction against respondent for his false pleading. Section 508(a)(1) authorizes the award of attorney fees after consideration of the financial resources of the parties for the maintenance or defense of any proceeding under the Act. (Ill. Rev. Stat. 1989, ch. 40, par. 508(a)(1).) Rule 137 allows, as a sanction against a party filing a false pleading, an order for the reasonable expenses, including attorney fees, incurred because of the false pleading. (134 Ill. 2d R. 137.) The record clearly shows respondent filed a false pleading and did not withdraw the false pleading for five months. Further, the evidence established petitioner has no ability to pay the fees and respondent does. We find no error.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.