*In re* MARRIAGE OF RONALD E. SMITH, Petitioner-Appellee, and CAROL L. SMITH, Respondent-Appellant.

Fourth District   No. 4—94—0009

Argued June 22, 1994.—Opinion filed July 26, 1994.

John F. Boos (argued), of Boos & Cusack, P.C., of Peoria, for appellant.

Bradley W. Swearingen (argued), of Moehle, Swearingen & Associates, Ltd., of Washington, for appellee.

JUSTICE COOK delivered the opinion of the court:

On October 5, 1993, the trial court entered a judgment dissolving the marriage and awarding the property of petitioner Ronald E. Smith and respondent Carol L. Smith. Respondent appeals, contending (1) the trial court erred in failing to consider dissipation of marital assets by petitioner; (2) petitioner failed to establish by the requisite clear and convincing evidence that the General Electric (GE) stock was nonmarital property; and (3) the trial court's ruling that the GE stock was nonmarital property was against the manifest weight of the evidence. We affirm in part, reverse in part, and remand.

Petitioner and respondent were married February 7, 1970. No children were born to the marriage, although respondent had two young children who were reared in the marital home. The parties separated August 23, 1993, and petitioner filed for divorce the next day.

At trial, the parties stipulated to the division of certain items of personal property, including furniture, clothing, tools, automobiles, and snowmobiles. The parties further stipulated they purchased the marital residence with $5,000 of petitioner's savings in contemplation of marriage and that two-thirds of a pasture which lay adjacent to the marital residence was marital property. The marital residence was currently appraised at $88,500, and the entire pasture was appraised at $5,500. The parties disagreed whether two other parcels of land which petitioner acquired from his parents were marital or nonmarital property. One of these properties was an 80-acre parcel known as the Metamora property; the other was a 25-acre parcel known as the Cruger property.

Respondent testified she was 49 years old, had a high school education, and was currently employed with the Woodford County Journal, where she was in advertising sales and performed secretarial-type work. Her annual salary was approximately $17,477. Respondent stated she planned to go to cosmetology school in the fall; the program would last 11 months and cost $5,800, plus the cost of uniforms. She indicated she would either like to open her own shop or go to work for a friend who had a shop. Respondent testified she did not want to receive the marital home but would need $350 to $400 a month to rent an apartment. She had been living in the marital home rent-free since the separation. She requested the court to order maintenance until such time as she completed her education and started working again.

Respondent further testified that when petitioner moved out of the marital residence, she withdrew $500 for her immediate needs and deposited another $14,500 from the parties' joint savings account into her personal account. She did so because when petitioner left, "[h]e took the checkbook with him, and that left me with nothing." At the time of trial, respondent had $10,630 remaining in her personal account. Of the approximately $4,000 spent, respondent had taken $60 per week as court-ordered maintenance, paid for repairs for water damage to the house, and spent the remainder on general living expenses.

Petitioner was 53 years old at the time of trial and worked as an electrician at Caterpillar, earning an annual salary of approximately $46,000. He acknowledged he spent the $4,200 remaining in the joint savings account after respondent had withdrawn the $15,000. He also received approximately $2,000 from Caterpillar as a vacation check and $6,400 from income of a farm on one of the disputed parcels of land. At the time of trial, petitioner had a combined $401.81 in his checking and savings accounts. When asked how he had spent all this money, in excess of his take-home pay of approximately $400 per week, he indicated he made a $2,600 payment to the bank for his truck and tractor loan, spent approximately $900 on gifts for his stepchildren, and paid a substantial amount in taxes and for repairs on the house. Petitioner testified he spent the remaining $7,000 on living expenses and vacations. He owed the bank another $2,600 for his truck and tractor loans. Due to petitioner's unexplained expenditure of $7,000, respondent's counsel requested the court award respondent the $10,600 in her possession and require petitioner to pay the balance of his truck and tractor loan.

The trial court also heard evidence regarding GE stock. Petitioner testified he received shares of stock as one of his benefits while he was in management at GE, prior to the parties' marriage. Respondent produced at trial 146 shares of GE stock held by petitioner and respondent in joint tenancy. Respondent claimed the shares were purchased through payroll deduction from petitioner's salary. She testified she was unsure whether some of the shares were purchased by petitioner before the marriage but asserted at least half of the shares were acquired due to a recent stock split. She was unsure whether she had purchased any of the shares.

Petitioner testified he thought there were 178 shares of stock but acknowledged respondent had produced only 146 shares. Although the certificates were all dated after 1970, the year the parties were married, petitioner thought that was due to stock splits. Petitioner indicated he left management before his marriage and did not receive

any further shares after he was in management, although he continued to work for GE until 1972. After the marriage, he transferred the stock into joint tenancy with respondent "for convenience purposes"—*i.e.*, so that she would receive the shares if he died—but he did not intend to make a gift to respondent at the time of the transfer. Respondent, however, testified the parties sometimes deposited the dividends in their joint savings account; other times, she stated, "we'd cash them and spend them. If we needed cash or he needed cash, they were just cashed."

The trial court found the Metamora property and the GE stock were petitioner's nonmarital property. The court then stated it believed an even split of the marital property would be appropriate. In order to equalize the distribution, the court ordered the marital home to be sold and respondent was to receive the first $37,000 of the proceeds, plus a one-time maintenance payment of $8,000 from those proceeds so she could attend cosmetology school. Any remaining proceeds from the sale of the home, after taxes and costs, were to be split equally between the parties.

On November 30, 1993, the trial court denied respondent's motion to reconsider the distribution of the parties' marital property. This appeal followed.

Section 503(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(b) (West 1992)) provides that all property acquired by either spouse after the marriage is presumed to be marital property. Property acquired by either party prior to the marriage is generally nonmarital property. If a spouse owning nonmarital property places that property in joint tenancy or some other form of co-ownership between the spouses, however, a rebuttable presumption of an intention to make a gift to the marital estate is created, which would result in the property becoming marital property. (*In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 279-80, 518 N.E.2d 1316, 1319; *In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 257, 483 N.E.2d 316, 320; *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 572-73, 440 N.E.2d 1028, 1030.) That presumption can be rebutted only by clear and convincing evidence. *Benz*, 165 Ill. App. 3d at 279-80, 518 N.E.2d at 1319, citing *Rink*, 136 Ill. App. 3d at 257, 483 N.E.2d at 320; *Wojcicki*, 109 Ill. App. 3d at 573, 440 N.E.2d at 1030.

Proof of the transferring spouse's intent is relevant, if not critical, in determining whether the presumption has been rebutted. (*In re Marriage of Cecil* (1990), 202 Ill. App. 3d 783, 788-90, 560 N.E.2d 374, 377-78 (trial court erred in refusing to allow petitioner to testify to his intent in placing property in joint ownership).) Ultimately, the

determination whether an asset is marital or nonmarital is a question of fact which rests upon the trial court's determination of the credibility of the witnesses and the weight to be accorded their testimony. (*In re Marriage of Werries* (1993), 247 Ill. App. 3d 639, 641, 616 N.E.2d 1379, 1383; *Cecil*, 202 Ill. App. 3d at 788-89, 560 N.E.2d at 377.) A reviewing court will not overturn a trial court's determination that an asset is nonmarital unless that determination is against the manifest weight of the evidence. *Werries*, 247 Ill. App. 3d at 641, 616 N.E.2d at 1383, citing *In re Marriage of Leisner* (1991), 219 Ill. App. 3d 752, 757, 579 N.E.2d 1091, 1094; see *In re Marriage of Flory* (1988), 171 Ill. App. 3d 822, 826-27, 525 N.E.2d 1008, 1011; *Benz*, 165 Ill. App. 3d at 280, 518 N.E.2d at 1319-20.

●1 Respondent asserts that petitioner's unsigned affidavit listing the stock under the heading "Joint/Marital property" is a judicial admission which the trial court should have found binding upon petitioner. Respondent raises this issue for the first time on appeal, and it is therefore waived.

Even if the issue were not waived, petitioner's listing may be an admission to be considered by the court, but it is not a binding judicial admission. Although petitioner's affidavit was not signed, petitioner's name appears as the person who took the oath, and the document is petitioner's affidavit despite his lack of signature. (*Chmielewski v. Kahlfeldt* (1992), 237 Ill. App. 3d 129, 133, 606 N.E.2d 641, 644, citing *Manuel v. McKissack* (1978), 60 Ill. App. 3d 654, 655-56, 377 N.E.2d 219, 220.) A judicial admission is "a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge." (*Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 480, 508 N.E.2d 301, 303, citing *McCormack v. Haan* (1960), 20 Ill. 2d 75, 76-77, 169 N.E.2d 239, 240.) In both *Chmielewski* and *Hansen,* the affidavits found to be judicial admissions were pretrial depositions. The *Hansen* court noted that assertions made in a deposition constitute binding judicial admissions only if they are unequivocal. (*Hansen*, 155 Ill. App. 3d at 480, 508 N.E.2d at 304.) The heading "Joint/Marital property" is ambiguous as the slash may be read either as "or" or "and." We find petitioner's affidavit was not an unequivocal judicial admission. It was, however, an ordinary admission to which the trial court could give such weight as it deemed appropriate.

●2 Respondent denied at trial that all of the certificates were acquired prior to the parties' marriage, asserting that half of the GE shares were acquired through a stock split a few years ago. However, stock splits are treated as economic appreciation is treated. A stock split does not increase the shareholder's ownership rights in a

corporation and adds nothing of substance to the shares of stock. (*In re Marriage of Jelinek* (1993), 244 Ill. App. 3d 496, 505, 613 N.E.2d 1284, 1291; *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 533, 427 N.E.2d 1239, 1246; *Allen v. National Bank* (1958), 19 Ill. App. 2d 149, 155, 153 N.E.2d 260, 263, citing *Towne v. Eisner* (1918), 245 U.S. 418, 426, 62 L. Ed. 372, 376, 38 S. Ct. 158, 159.) A stock split is not evidence that stock purchased prior to the marriage has been converted to marital property. *Jelinek*, 244 Ill. App. 3d at 504-05, 613 N.E.2d at 1290-91.

In determining whether the joint tenancy GE stock was marital property, the trial court stated:

> "The only evidence we have on that is his testimony, and he said he did it for convenience so that if he should die she wouldn't have to go through a hassle. I do feel that overcomes the presumption of gift, and the G.E. stock is to remain his non-marital property."

In fact there was testimony other than respondent's testimony, being the registration itself, which is some evidence of an intent to make a gift to the other tenant. There was also evidence that dividends from the stock were deposited into a joint account and used for marital purposes, which is inconsistent with petitioner's argument respondent was to have no present interest.

●3 The presumption that property held in joint tenancy form is marital property is a strong one, which can only be overcome by clear and convincing evidence. A presumption may be attacked by the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact; where the presumption is a strong one, the weight of the evidence to rebut it must be great. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 463, 448 N.E.2d 872, 877.) When a presumption is attacked by the introduction of contrary evidence, the question whether the presumption has been overcome is one for the court. The jury is not allowed to weigh the presumption against the contrary evidence which has been produced. If the presumption has been rebutted, it disappears from the case and the jury decides the case on the basis of the evidence; if the presumption has not been rebutted, it controls, and there is no issue of fact to be decided by the jury. (*In re Estate of Berry* (1988), 170 Ill. App. 3d 454, 462, 524 N.E.2d 689, 694.) A presumption may also be attacked, not by the introduction of contrary evidence, but by evidence attacking the basic fact giving rise to the presumption, such as the fact here that the stock was registered in joint tenancy. (*In re Estate of Kline* (1993), 245 Ill. App. 3d 413, 424, 613 N.E.2d 1329, 1337.) Where the basic fact is attacked, the jury determines whether

the basic fact exists. If it does exist, there is a presumption, and the presumption controls unless the court finds contrary evidence sufficient to cause the presumption to disappear from the case. (See Illinois Pattern Jury Instructions, Civil, No. 200.03, Comment, Procedural Effect at 200—16, 200—19 (3d ed. 1993).) Here petitioner did not contest the basic fact, *i.e.*, that the stock was registered in joint tenancy. Instead he attacked the presumed fact, *i.e.*, that the stock was marital property. Although no jury was involved in this case, the analysis is the same, and the first decision to be made by the trial court was whether the presumption was overcome by the contrary evidence. That decision was a question of law, on which we need give no deference to the decision of the trial court. We conclude that petitioner's self-serving assertion of his intent in this case was not clear and convincing evidence sufficient to rebut the presumption. If joint tenancy property could be made nonmarital so easily, section 503(b) might as well have not been included in the Act.

●4 Finally, respondent asserts the trial court erred in dividing the marital property because it failed to take into account petitioner's dissipation of marital assets. Section 503(d) of the Act (750 ILCS 5/503(d)(West 1992)) grants the trial court discretion to divide the marital property into "just proportions," taking into consideration all of the factors listed therein, as well as others deemed relevant to the case. (*In re Marriage of Nuechterlein* (1992), 225 Ill. App. 3d 1, 8, 587 N.E.2d 21, 25-26; *In re Marriage of Riech* (1991), 208 Ill. App. 3d 301, 308, 566 N.E.2d 826, 830.) A decision regarding division of marital property lies within the discretion of the trial court and will not be disturbed absent a showing of clear abuse of that discretion. *In re Marriage of Cheger* (1991), 213 Ill. App. 3d 371, 378, 571 N.E.2d 1135, 1140.

The trial court responded to respondent's argument that it had failed to take dissipation into consideration by recounting its distribution of the property, which the trial court had attempted to divide equally. After trial, respondent entered an agreement with a couple to purchase the home for $82,500. If we presume proceeds of $80,000 from the sale, after taxes and fees, the amounts awarded the parties would be as follows:

| Respondent (W) | | Petitioner (H) | |
|---|---|---|---|
| Savings | $10,630 | Pasture | $ 3,366 |
| Pension | 2,000 | Cruger (25 acres) | 46,250 |
| ¹/₂ H's pension | | ¹/₂ H's pension | |

| | | | |
|---|---|---|---|
| Proceeds of home | 37,000 | Truck & tractor loan | (2,600) |
| Maintenance | 8,000 | Dissipation | 7,000 |
| $1/2$ remaining proceeds of home | 17,500 | $1/2$ remaining proceeds of home | 17,500 |
| | $75,130 | | $74,116 |

It appears the trial court did charge petitioner with the $7,000 which he allegedly dissipated.

●5 Respondent further suggests the trial court erred in awarding her maintenance payments out of the proceeds of the sale of the parties' home, and thus out of property that was one-half hers. The court indicated the effect of its award of $8,000 in maintenance payments from the proceeds of the marital home was to give respondent $6,000. In fact, the effect of this award (assuming an equal division of property) was that petitioner would pay only $4,000 for respondent's maintenance. We cannot say the trial court abused its discretion in its award.

For the foregoing reasons, the judgment of the circuit court of Woodford County is reversed and remanded for a distribution of the GE stock and to permit any modification in the distribution of property as is desirable as a result of the GE stock distribution; the judgment is otherwise affirmed.

Affirmed in part; reversed in part and cause remanded.

LUND and GREEN, JJ., concur.