*In re* MARRIAGE OF R. DENNIS KOBERLEIN, Petitioner-Appellee, and E. KAYE KOBERLEIN, Respondent-Appellant.

Fourth District   No. 4—95—0596

Argued March 19, 1996.—Opinion filed June 26, 1996.

Ronda D. Taylor Glenn (argued), of Bloomington, for appellant.

Nick F. Burgrabe (argued), of Lincoln, for appellee.

JUSTICE GARMAN delivered the opinion of the court:
Respondent Kaye Koberlein appeals from an order of the circuit

court of De Witt County granting petitioner Dennis Koberlein's petition for dissolution, arguing that the trial court erred in awarding her only 51% of the marital estate and denying her request for permanent maintenance and attorney fees. We affirm.

The parties were married in 1962. In 1972, the parties purchased a grain and livestock farm, and Dennis had maintained the farming operations since that time. Kaye's primary role in the marriage was that of a homemaker. The parties separated in October 1993. At the time of trial, the parties had children ages 9, 25, and 28. Both parties were 51 years of age and in overall good health at the time the judgment for dissolution was entered in 1994.

Kaye currently works full-time as a teacher's assistant at a daycare facility. She takes home approximately $180 per week. Kaye worked a variety of part-time jobs during her marriage to Dennis. She was employed as a teacher's aide at different schools and had done alterations on a commission basis previously, in addition to working on the farm for a period of time. Although she had been living rent free in a rental house on the farm after her separation from Dennis, Kaye testified she felt it would be better if she moved farther away from Dennis. Kaye testified she expected to pay $550 to $600 per month for rent if she moved. Assuming no monthly rent obligations, her financial affidavit showed estimated monthly living expenses of $2,157.

Dennis' net profits from operation of the farm over the last five years have varied from $13,218 to $35,227 annually. He testified the sharp swings were attributable to the cyclical nature of the hog market. Dennis' financial affidavit listed $1,951 in average monthly income and $2,070 in average monthly expenses. He admitted his current banking account contained approximately $20,000 but explained this balance was the result of his currently low inventory levels. According to Dennis' testimony, any accumulation of money which existed in this account was the result of his 20 years of farm operation.

In a written memorandum of decision dated September 14, 1994, the trial court awarded custody of the parties' nine-year-old son, Phillip, to Dennis, subject to reasonable visitation by Kaye. Kaye was ordered to pay $36 per week in child support. The trial court found Kaye had nonmarital property consisting of a one-sixth interest in 120 acres of land and one-half interest in 40 acres of land. The court found the major asset of the marriage was the farm, which the court found had a net worth of $168,911, and awarded Kaye $91,000 of this net worth. Rather than requiring Dennis to sell the farm, the trial court ordered Dennis to pay Kaye the balance of $66,000 at 9% inter-

est over 10 years, in addition to an agreed-upon lump-sum payment of $25,000 to be paid to Kaye on October 31, 1994. The court also awarded Kaye the parties' Plymouth Voyager, debt free, as well as some $24,000 in investments. The division of marital property resulted in Dennis receiving 49% of the couple's assets while Kaye received 51%. The court found maintenance was warranted and ordered Dennis to pay Kaye $200 per month for 18 months. The trial court refused to award Kaye her attorney fees.

Kaye contends the trial court erred in two respects in awarding temporary maintenance but refusing an award of permanent maintenance. She claims (1) the trial court erred by applying an outdated section of the Illinois Marriage and Dissolution of Marriage Act (Act) (see 750 ILCS 5/504 (West 1994)) and (2) the trial court's decision denying permanent maintenance was against the manifest weight of the evidence. It is clear from its written memorandum of decision the trial court did apply the former version of section 504 of the Act, which was substantially revised in 1993 by Public Act 87—881. Pub. Act 87—881, eff. January 1, 1993 (1992 Ill. Laws 1019, 1023-24). The court stated it could not award maintenance unless it found Kaye:

"(1) lack[ed] sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and

(2) [was] unable to support herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) [was] otherwise without sufficient income."

See Ill. Rev. Stat. 1991, ch. 40, par. 504(a); *In re Marriage of Kerber*, 215 Ill. App. 3d 248, 252, 574 N.E.2d 830, 832 (1991). In determining the amount and duration of a maintenance award, the court then summarized the seven factors pursuant to section 504(b) of the Act as they appeared prior to the 1993 revisions. These factors included:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties;

(6) the ability of the spouse from whom maintenance is sought

to meet his needs while meeting those of the spouse seeking maintenance; and

(7) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1991, ch. 40, par. 504(b).

See also *Kerber*, 215 Ill. App. 3d at 253, 574 N.E.2d at 833.

Public Act 87—881 substantially rewrote the maintenance provision of the Act. The trial court is no longer required to find one of the previously listed conditions under section 504(a) of the Act before deciding to award maintenance. Other changes to the law include slight revisions in the list of factors the trial court is to examine when determining whether maintenance is warranted. These now include:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 1994).

■ While we agree with Kaye that the trial court applied the incorrect law in this case, we fail to see how she was prejudiced as a result. See *Ehredt v. Forest Hospital, Inc.*, 142 Ill. App. 3d 1009, 1012, 492 N.E.2d 532, 535 (1986) (holding an erroneous conclusion of law does not merit reversal unless it affects the outcome of the case); *In*

*re Marriage of Wilder*, 122 Ill. App. 3d 338, 344-45, 461 N.E.2d 447, 451 (1983). Kaye's argument is significantly weakened by the fact she was awarded temporary maintenance; even though the trial judge applied the older law, which arguably made it more difficult to obtain maintenance (see *In re Marriage of Harlow*, 251 Ill. App. 3d 152, 162, 621 N.E.2d 929, 937 (1993)), Kaye nevertheless received an award of maintenance. Moreover, the trial judge's written memorandum of decision indicates he considered Kaye's duties as a homemaker in reaching his decisions in this case. The most significant change to the section 504 factors, relative to the instant case, was the addition of consideration of a spouse's "domestic duties" in determining the amount and duration of maintenance. See 750 ILCS 5/504(a)(4) (West 1994). The trial judge noted, albeit in his discussion of the division of marital property, that Kaye's primary role in the marriage was that of a homemaker and, therefore, Dennis will have a "greater opportunity to acquire income and assets" in the future. Kaye has failed to show how any of the other changes and additions to section 504 could have affected the trial court's decision to her detriment.

Nor can we say the trial court's denial of permanent maintenance was against the manifest weight of the evidence. We will not disturb the trial court's decision granting or denying maintenance unless it was against was the manifest weight of the evidence or reflects an abuse of discretion. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 833, 633 N.E.2d 82, 95 (1994). Some of the section 504 factors can be viewed as justifying permanent maintenance in this case. Kaye does have a need for permanent maintenance, as her financial affidavit shows $2,157 in monthly expenses (not including housing). Her future earning capacity is not great, as Kaye currently takes home only $180 per week, has only a high school education, and can only advance to a teaching position at her current job. Kaye's earning capacity has been limited by her domestic duties over the years. Moreover, the marriage in this case was a lengthy one, lasting in excess of 30 years.

Yet other factors support the trial court's decision to award only temporary maintenance. Significantly, Dennis was awarded custody of Phillip and will be primarily responsible for his upbringing. See *In re Marriage of Rosen*, 126 Ill. App. 3d 766, 777, 467 N.E.2d 962, 969 (1984) (custody of children properly considered in determining whether maintenance is justified). In addition, the award of temporary maintenance must be balanced against Kaye's marital property award. See 750 ILCS 5/503(d)(10), 504(a)(1) (West 1994). Kaye was awarded over one-half of the marital property, and she will be receiving $91,000 plus 9% interest over the next 10 years (includ-

ing a lump-sum payment of $25,000 she has presumedly received by this time). The standard of living enjoyed by the parties during their marriage was not lavish. Further, Kaye is relatively young at 51 and is in good health.

Kaye argues she should not be required to sell her assets or impair her capital in order to sustain herself. While we agree generally with her contention, there is an important proviso of the preceding statement of law. In regards to whether maintenance is justified, a former spouse should not be required to dissipate assets or impair capital *as long as the other spouse has sufficient assets to meet both his needs and the needs of his former spouse. In re Marriage of Tietz*, 238 Ill. App. 3d 965, 973, 605 N.E.2d 670, 676 (1992); *In re Marriage of Cheger*, 213 Ill. App. 3d 371, 379-80, 571 N.E.2d 1135, 1141 (1991). While it is true one need not be reduced to poverty to justify *receiving* maintenance (*Harlow*, 251 Ill. App. 3d at 157, 621 N.E.2d at 934), it is equally true that one need not be reduced to poverty to avoid *paying* maintenance (*cf. In re Marriage of Werries*, 247 Ill. App. 3d 639, 655, 616 N.E.2d 1379, 1392-93 (1993) (a party does not have to be destitute to receive an award of attorney fees); *In re Marriage of Mantei*, 222 Ill. App. 3d 933, 941, 583 N.E.2d 1192, 1198 (1991) (holding same). One notable goal of the Act is to make separating spouses financially independent; unfortunately, often this is not possible due to the limited resources of both parties. *In re Marriage of Gunn*, 233 Ill. App. 3d 165, 174-75, 598 N.E.2d 1013, 1020 (1992); *In re Marriage of Simmons*, 87 Ill. App. 3d 651, 661, 409 N.E.2d 321, 328 (1980). Here, while Kaye certainly has shown some need for permanent maintenance, the trial court could reasonably have concluded Dennis simply did not have the financial resources to justify an award of permanent maintenance. Dennis' profits from operation of the farm over the past five years have only averaged slightly more than $21,000 per year, and we note farming is a seven-days-a-week job. The couple did not generate significant assets in their 20-plus years of farm operation, and Dennis now has primary financial responsibility for Phillip. Although we might have ruled differently on the issue of permanent maintenance, that is not our prerogative—we look only to see if the trial court's decision was against the manifest weight of the evidence, and here we cannot say that is the case. See *Werries*, 247 Ill. App. 3d at 655, 616 N.E.2d at 1392.

This court recently reached a comparable decision based on similar facts in *In re Marriage of Smith*, 265 Ill. App. 3d 249, 638 N.E.2d 384 (1994). The parties in that case had been married 23 years before separating. The wife was 49 years old at the time of the dissolution proceedings. She had only a high school education and worked as a

secretary making $17,477 per year. She lived rent free in the marital home following the separation but wished to find an apartment following the dissolution of the marriage. The husband in *Smith* worked as an electrician and earned $46,000 annually. *Smith*, 265 Ill. App. 3d at 250-51, 638 N.E.2d at 385-86. The trial court found an even split of the marital property was appropriate. The court ordered the marital home to be sold and awarded the wife $8,000 in maintenance. The $8,000 was to come from the proceeds of the sale of the home but prior to the division of the proceeds, thereby reducing the net award of maintenance to $4,000. *Smith*, 265 Ill. App. 3d at 252, 638 N.E.2d at 386-87. In total, the wife received slightly over one-half of the value of the marital property. This court affirmed the award of maintenance and refused to find an abuse of discretion by the trial court. *Smith*, 265 Ill. App. 3d at 256, 638 N.E.2d at 389. Considering the readily apparent similarities between *Smith* and the instant case, the fact that the husband in *Smith* earned over twice as much as does Dennis here, and the fact that the husband in *Smith* did not have the additional financial burden resulting from an award of custody, the trial court did not abuse its discretion in the present case.

■ We reject Kaye's contention the trial court's division of marital property was against the manifest weight of the evidence for reasons similar to those stated previously. Section 503 of the Act requires the trial court to divide marital property in "just proportions," considering the following relevant factors:

"(1) the contribution of each party to the acquisition, preservation, or increase or decrease in value of the marital or non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the dissipation by each party of the marital or non-marital property;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(6) any obligations and rights arising from a prior marriage of either party;

(7) any antenuptial agreement of the parties;

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(9) the custodial provisions for any children;

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(12) the tax consequences of the property division upon the respective economic circumstances of the parties." 750 ILCS 5/503(d)(1) through (d)(12) (West 1994).

While the touchstone of proper apportionment is whether the division is equitable in nature, a just division does not require mathematical equality, given the range of factors to be considered by the trial court. *In re Marriage of Guntren*, 141 Ill. App. 3d 1, 5, 489 N.E.2d 1120, 1122 (1986). Kaye acknowledges the trial court did consider several of the above factors. She admits custody of Phillip was properly considered in Dennis' favor and Dennis was properly allowed to keep the farm since he was awarded custody of Phillip. See 750 ILCS 5/503(d)(5), (d)(9) (West 1994). To the extent many of the other factors overlap with those considered in determining whether maintenance is justified, we have already noted how these factors support the trial court's decision in this case.

■ Finally, Kaye contends the trial court erred in refusing her request for attorney fees. Section 508 of the Act does permit the trial court to award attorney fees in actions under the Act "after considering the financial resources of the parties." 750 ILCS 5/508(a) (West 1994). However, whether an award of attorney fees is warranted is a matter within the sound discretion of the trial court, and we will not disturb the trial court's decision absent an abuse of discretion. *In re Marriage of McCoy*, 272 Ill. App. 3d 125, 130-31, 650 N.E.2d 3, 6 (1995). Here, much of the preceding discussion relating to the propriety of the trial court's ruling on maintenance and the division of marital property also supports that court's denial of an award of attorney fees.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

COOK, P.J., and GREEN, J., concur.