NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190632-U

NO. 4-19-0632

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 16, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* ESTATE OF JOHN C. HIRSCHFELD, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Laura L. (Hirschfeld) Hollis, John S. Hirschfeld, | ) | Champaign County |
| Christopher C. Hirschfeld, Jennifer E. (Hirschfeld) Ryan, | ) | No. 14P333 |
| Adam B. Hirschfeld, Catherine P. (Hirschfeld) Murphy, | ) | |
| and Robert F. Hirschfeld, Petitioners-Appellants, | ) | |
| v. | ) | Honorable |
| Mary E. Hirschfeld, Executrix, | ) | Gary A. Webber, |
| Respondent-Appellee). | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court did not err by granting executrix's motion for summary judgment on the will contest brought by decedent's children.

¶ 2   In June 2015, petitioners, Laura L. (Hirschfeld) Hollis, John S. Hirschfeld, Christopher C. Hirschfeld, Jennifer E. (Hirschfeld) Ryan, Adam B. Hirschfeld, Catherine P. (Hirschfeld) Murphy, and Robert F. Hirschfeld (collectively the Hirschfeld Siblings), filed a petition to contest the validity of and set aside the will of their father, John C. Hirschfeld, deceased. They sought to set aside decedent's will executed in August 2006 (hereinafter August 2006 Will) based on (1) a lack of testamentary capacity, (2) undue influence, and (3) fraud. The petition was later amended. In November 2017, respondent, Mary E. Hirschfeld, executrix of decedent's estate, filed a motion for summary judgment on the amended petition to contest the validity of decedent's August 2006 Will. The Hirschfeld Siblings filed a response to the

summary judgment motion and attached 16 exhibits.  Executrix filed a reply and a motion to strike the Hirschfeld Siblings' exhibits.  Thereafter, the Hirschfeld Siblings filed a motion to stay the summary judgment proceedings to continue and complete discovery.  In June 2019, the Champaign County circuit court granted in part and denied in part executrix's motion to strike and denied the Hirschfeld Siblings' motion to stay the summary judgment proceedings.  After a July 2019 hearing, the court granted executrix's summary judgment motion.

¶ 3        The Hirschfeld Siblings appeal, asserting (1) the circuit court erred by denying their motion to stay the summary judgment proceedings to permit further discovery, (2) the court erred by striking many of the exhibits attached to their response to the summary judgment motion, (3) the court erred by granting summary judgment in favor of executrix, and (4) the cumulative effect of the errors denied the Hirschfeld Siblings the ability to present a thorough case in summary judgment and the right to present their case to a jury.  We affirm.

¶ 4                               I. BACKGROUND

¶ 5        Decedent died on November 30, 2014.  At the time of his death, decedent was living in Champaign, Illinois, with his second wife, executrix of decedent's estate.  The Hirschfeld Siblings were decedent's seven children with decedent's first wife, Rita Porteous (Hirschfeld) Henneman.

¶ 6        On April 1, 1997, decedent executed a will (hereinafter 1997 Will) naming his son, John S. Hirschfeld, as the executor and leaving all of his property in equal shares to the Hirschfeld Siblings.  The judgment dissolving the marriage of decedent and Henneman was entered on August 11, 1998.  At that time, decedent's estate was valued at approximately $2,600,000.  Decedent had retired from the full-time practice of law at the firm of Meyer Capel but continued to receive income from multiple sources.

¶ 7        On May 29, 1999, decedent married executrix. On March 24, 2000, decedent executed a durable power of attorney naming executrix as his attorney-in-fact. In January 2004, decedent executed a will (hereinafter 2004 Will). The 2004 Will named Donald Aldeen, one of decedent's former law partners, as executor. The 2004 Will noted decedent owned a home on Waverly Drive in Champaign and, if he still owned the home at his death, he left his interest in the home to executrix for life. Upon executrix's death, decedent's interest in the Waverly Drive home was to be equally divided among the Hirschfeld Siblings. The 2004 Will also left executrix $495,000. Decedent stated the aforementioned amount was 51% of $965,895, which was the sum of the $495,000 plus $470,895, the expected proceeds from decedent's life insurance policies. Decedent stated in his will he had left his life insurance proceeds to the Hirschfeld Siblings in an irrevocable life insurance trust. The 2004 Will further identified the types of assets executrix could choose from in receiving her $495,000. Decedent then left the remainder of his property, including the proceeds from the sale of decedent's Mariway Farms if he still owned the property at the time of his death, 51% to executrix and 7% of to each of the Hirschfeld Siblings. Decedent also left certain personal property to each of the Hirschfeld Siblings. In February 2006, decedent executed another will (hereinafter February 2006 Will). The copy in the record of the February 2006 Will is unsigned. The February 2006 Will included the name of a new grandchild and listed gold as one of the assets from which executrix could select in receiving her $495,000. The main bequests in the will stayed the same as the 2004 Will. In August 2006, decedent executed the will, which is the subject of the will contest. The August 2006 Will named executrix as the executor of decedent's estate. The distribution of most of the property remained the same as in the 2004 Will and the February 2006 Will. Decedent did make changes to the personal property gifts he left to the Hirschfeld Siblings.

¶ 8        In December 2014, executrix filed the petition for probate of decedent's August 2006 Will and for letters testamentary.  The petition listed the value of decedent's personal estate as $226,000 and the value of his real estate as "Undetermined."  That same month, the circuit court entered an order admitting the will to probate and appointed executrix as the independent executor.  In January 2015, executrix filed the inventory, listing the decedent's personal property with a total value of $209,499.53 and stating the decedent had no real estate.

¶ 9        Thereafter, counsel for the Hirschfeld Siblings entered her appearance in this case and filed a petition to terminate independent administration of the estate, which the circuit court granted.  In May 2015, the Hirschfeld Siblings filed a petition for an accounting and for a citation to discover information, which they later amended several times.  In June 2015, the Hirschfeld Siblings filed their petition to contest the validity of and set aside the August 2006 Will.  In their petition, the Hirschfeld Siblings asserted (1) decedent lacked the requisite testamentary capacity, (2) the August 2006 Will was procured by executrix's undue influence, and (3) the August 2006 Will was procured by fraud committed by executrix.  The petition prayed for, *inter alia*, (1) the invalidation of the August 2006 Will, (2) the admission of the 1997 Will to probate to be administered by the court, and (3) the removal of executrix as executor of decedent's estate.  Executrix filed a motion to dismiss the Hirschfeld Siblings' petition, which the court granted in part and denied in part.  In February 2016, the Hirschfeld Siblings filed a first amended petition to contest the validity of and set aside the August 2006 Will, raising the same three contentions.  Attached to the first amended petition to contest the validity of the August 2006 Will were copies of the 1997 Will and the 2004 Will.

¶ 10        Regarding decedent's testamentary capacity, the petition alleged "[d]ecedent lacked testamentary capacity to know the nature and extent of his property, know the natural

- 4 -

objects of his bounty, and make a disposition of his property in accordance with some plan formed in his mind." They noted decedent was diagnosed with a brain tumor and dementia in January 2005 and he also suffered from the degenerative effects of decades of alcoholism and prescription medication abuse. Additionally, decedent was on more than 10 prescription medications and continued to drink alcohol even though many of the prescription medications strongly discouraged alcohol use. The Hirschfeld Siblings also pointed out several inconsistencies between the August 2006 Will and the actual property owned by decedent.

¶ 11       As to undue influence, the petition alleged executrix was displeased with decedent's estate plan under the 1997 Will and threatened to leave decedent unless he adjusted his estate plan to give her control of the estate. Between 2000 and 2005, decedent and the Hirschfeld Siblings were preparing to place certain real and personal property of decedent located in Williamson County into a family limited liability company (LLC). After executrix learned about the plan, she demanded decedent back out of the plan to create an LLC and give her control of the property in Williamson County. Decedent did not go through with the plan to create a family LLC and purportedly executed the August 2006 Will shortly after making that decision. The count also alleged decedent was increasingly and completely dependent upon executrix for his care, which placed executrix in a dominant role with respect to decedent's health; psychological, physical, and emotional care; and his property, assets, and finances. Decedent reposed trust and confidence in executrix as a result of her being his wife and then later as a necessity due to his declining physical and mental conditions. According to the Hirschfeld Siblings, when decedent executed the August 2006 Will, he was no longer licensed to practice law, no longer capable of providing legal advice, unable to properly draft legal documents, and could not accurately assess the independent merits of legal advice provided by another, which

placed executrix in an active, instrumental role when the August 2006 Will was procured, prepared, and executed.

¶ 12      Regarding fraud, the amended petition contended the decedent intended to leave half of his assets to the Hirschfeld Siblings, and executrix represented to decedent and the Hirschfeld Siblings she would manage decedent's assets according to decedent's intent. However, executrix engaged in a deliberate and elaborate scheme to disinherit the Hirschfeld Siblings by pressuring decedent to change his will in August 2006 and perhaps earlier wills, including the 2004 Will. As decedent's attorney in fact, executrix was able to convert virtually all of decedent's property to her own individual ownership and use, resulting in virtually nothing passing to the Hirschfeld Siblings. The Hirschfeld Siblings noted differences between the 2004 Will and August 2006 Will. They also asserted the initials on each page of the August 2006 Will are not decedent's initials as evidenced by his initials on the 1997 Will.

¶ 13      In November 2017, executrix filed a motion for summary judgment with exhibits and a supporting memorandum. In her motion, she asserted the supporting exhibits showed decedent did not lack testamentary capacity when he executed his August 2006 Will, she did not unduly influence decedent to execute the August 2006 Will, and she did not fraudulently induce decedent to execute his August 2006 Will. The exhibits were the following: (1) the May 2016 discovery deposition of LynnEl Springer, a legal assistant with Meyer Capel since February 2000; (2) the May 2016 discovery deposition of Roxanna Gambill, a legal secretary with Meyer Capel since November 2002; (3) the May 2016 discovery deposition of Vicki Dunlap, an administrative assistant with Meyer Capel since December 1988; (4) the May 2016 discovery deposition of Sheri Buck Reynolds, a legal assistant at Meyer Capel from January 1978 to April 2016; (5) the May 2016 discovery deposition of Karen Sturgeon, a legal assistant with Meyer

Capel since 2000 and decedent's assistant at the firm from 1989 to 1996; (6) the May 2016 discovery deposition of Kari (Kaisner) Beckett, a legal assistant at Meyer Capel since May 2003; (7) the April 2016 evidence deposition of Aldeen, an attorney at Meyer Capel until 2007; (8) a group of relevant exhibits used for the depositions; and (9) executrix's affidavit.

¶ 14     In February 2018, the Hirschfeld Siblings filed a response to executrix's motion for summary judgment asserting executrix was not entitled to summary judgment on any of the claims in their first amended petition to contest the validity of the August 2006 Will. They also argued executrix's motion for summary judgment was premature because discovery had just begun and had been delayed by executrix's conduct. The Hirschfeld Siblings noted executrix filed her motion for summary judgment 44 days after she provided the first set of documents and answers to interrogatories in October 2017. They had submitted their request for production of documents and their interrogatories in July 2016. The Hirschfeld Siblings attached the following exhibits to their response to the motion for summary judgment: (1) February 2018 affidavit of Christopher, decedent's son; (2) February 2018 affidavit of Ryan, decedent's daughter; (3) transcript of the circuit court's ruling on executrix's motion to dismiss the Hirschfeld Siblings' will contest; (4) decedent and executrix's May 26, 1999, prenuptial agreement; (5) e-mails from executrix to the Hirschfeld Siblings regarding the sale of Mariway Farms; (6) September 2011 letter from the Hirschfeld Siblings' attorney to executrix and decedent's attorney; (7) October 2011 letter from executrix and decedent's attorney to the Hirschfeld Siblings' attorney; (8) May 2007 memorandum from Aldeen to executrix regarding a lockbox; (9) e-mails from executrix to Justin Goff regarding the sale of personal property at Mariway Farms; (10) December 2014 letter from Aldeen to executrix; (11) July 2013 e-mail from executrix to the Hirschfeld Siblings; (12) May 2004 letter from attorney John Elder to Mark

Wisniewski, Senior Vice President of BankIllinois, regarding the Hirschfeld Irrevocable Trust; (13) facsimile cover sheets from Joseph R. Burden of Northwestern Mutual Financial Network regarding decedent's policies held in a trust; (14) check registers showing two payments to "Rejuvenis"; (15) documents relating to a whole life insurance policy purchased by executrix; and (16) January 2018 letter from the Hirschfeld Siblings' attorney to executrix's attorney regarding deficiencies in her responses to their discovery requests. Executrix filed a reply memorandum in support of her motion for summary judgment. In response to the prematurity argument, she asserted the Hirschfeld Siblings waited a year to the start their discovery while she acted expeditiously.

¶ 15        In addition to her reply to the Hirschfeld Siblings' response to the motion for summary judgment, executrix filed a motion to strike the Hirschfeld Siblings' submissions made in opposition to her motion for summary judgment alleging (1) portions of Christopher's and Jennifer's affidavits were inadmissible for summary judgment purposes, (2) the transcript of the January 2016 proceedings in this case was irrelevant, and (3) the remaining exhibits were inadmissible because they lacked sufficient foundation and for other reasons. The Hirschfeld Siblings filed a response to the executrix's motion to strike arguing, *inter alia*, they should be given a reasonable opportunity to complete discovery prior to any definitive ruling on the admissibility of their evidence. Executrix filed a reply asserting the Hirschfeld Siblings conceded many of her arguments and more discovery will not aid the Hirschfeld Siblings in countering the summary judgment motion. On February 8, 2019, the circuit court held a hearing on the motion to strike. It noted the appropriate response would have been for the Hirschfeld Siblings to have requested more time for discovery before responding to the motion for summary judgment. Under the circumstances, the court found it was appropriate to give the Hirschfeld

Siblings time to file a pleading showing the additional discovery will alter the current facts. It allowed them 14 days to file a motion under Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013).

¶ 16　　　　On February 20, 2019, the Hirschfeld Siblings filed subpoenas and notices of deposition for Chantel Coad-Pyke, a caretaker for decedent from June 2013 to October 2014, and Wisniewski. They also filed a subpoena for records and notice of records deposition for Clark Lindsey Rehab. Two days later, the Hirschfeld Siblings filed a motion to stay the summary judgment proceedings to conduct necessary discovery. In addition to the motion, they filed a Rule 191(b) affidavit and a supporting memorandum. Even though they filed a Rule 191(b) affidavit, they asserted in their motion for a stay that the affidavit requirement of Rule 191(b) did not apply because executrix's summary judgment motion was a " 'Celotex-type' motion." In the Rule 191(b) affidavit, the Hirschfeld Siblings identified four categories of individuals from which they needed more discovery. Some of the individuals in the categories were named and some were unnamed. Coad-Pyke was named, but Wisniewski was not named.

¶ 17　　　　On February 28, 2019, executrix filed a motion for a protective order, seeking to have the circuit court direct the withdrawal of the notices and subpoenas for Clark Lindsey Rehab, Coad-Pyke, and Wisniewski. The motion asserted the court's order allowing the Hirschfeld Siblings to file a pleading showing additional discovery was warranted indicated the court contemplated no further discovery until it considered the Hirschfeld's pleading requesting additional discovery. In a March 13, 2019, written order, the circuit court granted in part and denied in part the motion for a protective order. The court ordered the Hirschfeld Siblings to immediately withdraw the subpoenas to Coad-Pyke and Wisniewski but allowed the Hirschfeld Siblings to proceed with their records subpoena to Clark Lindsey Rehab.

¶ 18       On March 8, 2019, executrix submitted a response to the motion to stay and submitted the affidavits of (1) Glenn A. Stanko, executrix's first attorney in this case; (2) John E. Thies, one of executrix's current attorneys; and (3) executrix.  Attached to Stanko's affidavit were (1) respondent's discovery requests from this case; (2) some of decedent's medical records from 2005 and 2006; (3) executrix's answers to the Hirschfeld Siblings' amended interrogatories; (4) a list of executrix's documents produced and provided to the Hirschfeld Sibilings; (5) subpoenas for records from Meyer Capel and Chesser Financial; and (6) a February 22, 2018, affidavit by Coad-Pyke.  Attached to Thies's affidavit were portions of a June 2018 discovery deposition of executrix.

¶ 19       On June 7, 2019, the circuit court held a hearing on the Hirschfeld Siblings' motion to stay the summary judgment proceedings and executrix's motion to strike the Hirschfeld Siblings' submission in opposition to the motion for summary judgment.  The court denied the motion to stay but noted its ruling did not prevent the Hirschfeld Siblings from conducting further discovery.  As to the motion to strike, the court addressed each exhibit individually and then entered a written order.  The court struck in part the affidavits of Christopher and Jennifer.  The court completely struck the remainder of the Hirschfeld Siblings' exhibits.

¶ 20       At a July 19, 2019, hearing, the circuit court heard arguments on executrix's motion for summary judgment.  The court granted the motion and entered a written order on August 16, 2019.

¶ 21       On September 13, 2019, petitioner filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017), and thus this court has jurisdiction of the circuit court's August 16, 2019, judgment under Illinois Supreme Court Rule

304(b)(1) (eff. Mar. 8, 2016).

¶ 22                                  II. ANALYSIS

¶ 23                        A. Hirschfeld Siblings' Motion to Stay

¶ 24        The Hirschfeld Siblings contend the circuit court erred by denying their right to
continue and complete discovery before granting summary judgment in favor of executrix.  They
note the circuit court failed to comply with Illinois Supreme Court Rule 218 (eff. July 1, 2014)
when it did not hold a timely case management conference and enter a scheduling order for
discovery.  Executrix argues the court did not abuse its discretion by denying the Hirschfeld
Siblings request for additional time for discovery under Illinois Supreme Court Rule 191(b) (eff.
Jan. 4, 2013).  She notes the Hirschfeld Siblings failed to meet the requirements of Rule 191(b).
The Hirschfeld Siblings responded their Rule 191(b) affidavit did assert relevant information
justifying the requested additional discovery.

¶ 25        We begin by noting the Hirschfeld Siblings do not point out any objections they
raised to the lack of a discovery schedule before executrix filed her motion for summary
judgment.  Section 2-1005(b) of the Code of Civil Procedure (Procedure Code) (735 ILCS
5/2-1005(b) (West 2016)) allows a defendant to move for a summary judgment in his or her
favor at any time and with or without supporting affidavits.  Illinois Supreme Court Rule 191
(eff. Jan. 4, 2013) governs proceedings under section 2-1005.  Illinois Supreme Court Rule
191(b) (eff. Jan. 4, 2013) allows the nonmoving party on a motion for summary judgment to
submit an affidavit addressing material facts that it could not obtain with supporting materials.
The rule specifically provides that, if such an affidavit

> "contains a statement that any of the material facts which ought to appear in the
> affidavit are known only to persons whose affidavits affiant is unable to procure

by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof. The interrogatories and sworn answers thereto, depositions so taken, and sworn copies of documents so furnished, shall be considered with the affidavits in passing upon the motion." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

Thus, once a party files a motion for summary judgment, the procedures for any incomplete discovery is governed by Rule 191(b). While we do not condone noncompliance with supreme court rules, the alleged noncompliance with Rule 218 became just a consideration in whether the court should allow additional discovery under Rule 191(b). It does not constitute an independent basis for reversible error once the motion for summary judgment has been filed.

¶ 26 Illinois courts have recognized Rule 191(b)'s requirements may be relaxed depending on the type of summary judgment motion. A defendant can succeed in obtaining summary judgment as a matter of law in the following two ways: (1) by affirmatively disproving an element of the nonmovant's case or (2) by establishing that the nonmovant's evidence is insufficient to avoid summary judgment as a matter of law. *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 25, 4 N.E.3d 514. A "Celotex-type motion" is a term derived from *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and describes the former type of summary judgment motion. *Jiotis*, 2014 IL App (2d) 121293, ¶ 25. When a defendant files a

"Celotex-type motion," strict compliance with Rule 191(b)'s affidavit requirement is not automatically necessary, whereas compliance is required with a traditional motion. *Jiotis*, 2014 IL App (2d) 121293, ¶ 26.

¶ 27    Here, the circuit court found executrix's summary judgment motion was a traditional one and a Rule 191(b) affidavit was required. The Hirschfeld Siblings filed a Rule 191(b) affidavit, and the court denied the Hirschfeld Siblings request to stay the summary judgment proceedings to allow for further discovery. In a footnote, the Hirschfeld Siblings question whether the summary judgment was a traditional one but do not present a formal argument on the matter. Thus, we analyze the request for additional discovery as one requiring a Rule 191(b) affidavit. Executrix contends the Hirschfeld Siblings forfeited this issue by not filing their Rule 191(b) affidavit with their response to executrix's summary order. However, the circuit court found it was appropriate under the circumstances to allow the Hirschfeld Siblings to file their motion to stay the summary judgment proceedings with the attached Rule 191(b) affidavit after their response to the motion for summary judgment. Accordingly, we do not find the Hirschfeld Siblings have forfeited their claim for additional discovery.

¶ 28    This court reviews a circuit court's decision to deny a Rule 191(b) motion for discovery under an abuse of discretion standard. *National Tractor Parts Inc. v. Caterpillar Logistics Inc.*, 2020 IL App (2d) 181056, ¶ 69. A circuit court abuses its discretion only when no reasonable person would accept the view adopted by the circuit court. *National Tractor Parts Inc.*, 2020 IL App (2d) 181056, ¶ 69.

¶ 29    Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) requires the party in his or her Rule 191(b) affidavit to name the persons whose affidavits the party has been unable to obtain and show why their affidavits cannot be procured and what affiant believes they would

- 13 -

testify to if sworn with his or her reasons for that belief. The Rule 191(b) affidavit must state *specifically* what the affiant believes the prospective witness would testify to if sworn. *Giannoble v. P & M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1065, 599 N.E.2d 1183, 1192 (1992). Merely alleging a certain discovery matter may shed light on an issue is insufficient. *Giannoble*, 233 Ill. App. 3d at 1065, 599 N.E.2d at 1192.

¶ 30    In their Rule 191(b) affidavit, the Hirschfeld Siblings set forth four categories of individuals from whom they need additional discovery. For several of the categories the circuit court found the desired discovery would not lead to relevant evidence. "For evidence in cases involving questions of mental capacity and undue influence to be relevant, it must bear on the factors of mental capacity and undue influence existing at the time of the execution of the testamentary document in issue." *In re Estate of Elias*, 408 Ill. App. 3d 301, 317, 946 N.E.2d 1015, 1030-31 (2011). " 'Proof of the mental condition of the testator a reasonable time before or after the making of a will may be received where it tends to show mental condition at the time of the execution of the instrument.' " (Emphasis omitted.) *In re Estate of Berry*, 170 Ill. App. 3d 454, 458, 524 N.E.2d 689, 692 (1988) (quoting *Peters v. Peters*, 376 Ill. 237, 243, 33 N.E.2d 425, 427 (1941)). Reviewing courts recognize the existence of substantial discretion in the circuit court to determine the time frame within which events concerning the testator are relevant to the capacity of the decedent in a will contest. *Elias*, 408 Ill. App. 3d at 317, 946 N.E.2d at 1031.

¶ 31    The first category was caretakers for decedent. The one person named was Coad-Pyke, who was one of decedent's caretakers in 2013 and 2014. The other unnamed caretaker identified as having made statements about executrix's treatment of decedent also took care of decedent in 2013. As to the other caregivers as potential witnesses, the affidavit stated

- 14 -

they would testify to the interactions between decedent and executrix. In her March 2019 affidavit, executrix noted she did not hire any home healthcare providers for decedent until 2008. The Hirschfeld Siblings do not refute that in their reply brief. Given the length of time after the execution of the will and when caregivers for decedent were hired, we find the circuit court did not err by finding further discovery from the caretakers would be irrelevant to decedent's capacity and executrix's actions around the execution of the August 2006 Will. Additionally, we note Coad-Pyke was known to the Hirschfeld Siblings in January 2017 and they do not explain why an affidavit by her could not have been filed with their response to the motion for summary judgment.

¶ 32    The second category was witnesses related to financial matters, and the Rule 191(b) affidavit named James Chesser and Kathy Calvert, executrix's daughter. In her brief, executrix notes Chesser did not become decedent's financial advisor until 2007 or 2008 and cites her 2019 affidavit. The Hirschfeld Siblings again do not refute that assertion in their reply brief. They also do not explain how Chesser would have knowledge of decedent's condition and executrix's actions at the time surrounding the execution of the August 2006 Will, which is the relevant time period in this case. Thus, we again do not find the circuit court erred by concluding Chesser would not provide relevant evidence. As to Calvert, her alleged statements noted in the affidavit were made in 2013 or 2014. The affidavit makes no reference to Calvert's knowledge regarding executrix's actions or decedent's condition during the relevant time period. Beyond the alleged statement in 2013 or 2014, the affidavit lacks specificity as to what Calvert would testify to. Thus, we find the circuit court also did not abuse its discretion by denying the Hirschfeld Siblings' request for time to take Calvert's deposition.

¶ 33    The third category was medical witnesses. The Hirschfeld Siblings contended

they had been unable to secure a medical expert since discovery was not complete.  The Rule 191(b) affidavit did not identify an expert witness or state what the expert would testify to.  The affidavit stated such information was missing because the Hirschfeld Siblings still needed discovery from other witnesses, including unknown caregivers.  However, as previously found, decedent did not have caregivers until 2008, and we have affirmed the circuit court's conclusion evidence from such individuals would be irrelevant to the issues addressed by the summary judgment motion.  Moreover, as the circuit court noted, the Hirschfeld Siblings had decedent's medical records for a lengthy period and thus had adequate time to identify possible expert witnesses and determine what their testimony would be.  Accordingly, the circuit court also did not abuse its discretion by not allowing the Hirschfeld Siblings a stay to obtain medical experts.

¶ 34          The final category is legal witnesses.  The Rule 191(b) affidavit did not identify those witnesses by name but only identified them as individuals at Meyer Capel.  Executrix notes the Hirschfeld Siblings subpoenaed Meyer Capel twice in 2016 and Meyer Capel provided documents to them in January 2017.  Thus, she argues the Hirschfeld Siblings were aware individuals at Meyer Capel potentially possessed relevant information.  The Hirschfeld Siblings do not address this category of witnesses in their reply brief.  We note the Hirschfeld Siblings' counsel was present for the depositions of several current and former Meyer Capel employees in April and May 2016.  Thus, we find the record shows the Hirschfeld Siblings had sufficient time to identify potentially relevant witnesses at Meyer Capel and obtain any relevant affidavits.  The Rule 191(b) affidavit does not identify any reason why they were unable to do so.  Accordingly, we find the circuit court did not abuse its discretion in denying the motion to stay the summary judgment proceedings as to this category of witnesses.

¶ 35          We recognize the Hirschfeld Siblings raised assertions in both this court and the

circuit court they lacked time to complete their discovery and executrix interfered with their discovery. However, those claims standing alone are insufficient to warrant additional discovery under Rule 191(b), which applies to this case. Thus, we find the circuit court did not abuse its discretion by denying the motion to stay the summary judgment proceedings.

¶ 36                                B. Executrix's Motion to Strike

¶ 37         The Hirschfeld Siblings next contend the circuit court erred by granting in part executrix's April 2018 motion to strike evidence presented by the Hirschfeld Siblings in response to her motion for summary judgment. Executrix contends the circuit court properly struck the Hirschfeld Siblings' exhibits. Generally, "this court reviews a circuit court's decision on a motion to strike an affidavit for an abuse of discretion, but when the motion 'was made in conjunction with the court's ruling on a motion for summary judgment,' we employ a *de novo* standard of review with respect to the motion to strike." *Palmer v. Mellen*, 2017 IL App (3d) 160022, ¶ 33, 74 N.E.3d 1034 (quoting *Jackson v. Graham*, 323 Ill. App. 3d 766, 773, 753 N.E.2d 525, 531 (2001). Accordingly, we employ the *de novo* standard of review on this issue.

¶ 38         In support of their response to executrix's motion for summary judgment, the Hirschfeld Siblings submitted 16 exhibits, 14 of which the circuit court struck *in toto* and 2 of which it struck in part. The court struck the exhibits for one or more of the following reasons: (1) a violation of the Dead-Man's Act (735 ILCS 5/8-201 (West 2018)), (2) irrelevant to the issues in the motion for summary judgment, and (3) lack of foundation for the exhibit. On appeal, the Hirschfeld Siblings challenge the court's ruling on 12 of the 16 exhibits. In doing so, most of their arguments for each exhibit are brief, include few citations to legal authority, and primarily only provide the citation to the record for the exhibit itself and not the facts in the record supporting their claim the exhibit was proper. Illinois Supreme Court Rule 341(h)(7) (eff.

- 17 -

May 25, 2018) requires a party's argument to provide "citation of the authorities and the pages of the record relied on." The failure to comply with Rule 341(h)(7) results in forfeiture of the argument. *Keeling v. Board of Trustees of Forest Park Police Pension Fund*, 2017 IL App (1st) 170804, ¶ 46, 96 N.E.3d 492. Thus, we will apply forfeiture to arguments violating Rule 341(h)(7).

¶ 39                                1. *Christopher's Affidavit*

¶ 40          Christopher's affidavit was exhibit No. 1. The Hirschfeld Siblings quote portions of paragraphs 7 and 17 of Christopher's affidavit in their brief and assert the circuit court erred by finding a violation of the Dead-Man's Act (735 ILCS 5/8-201 (West 2018)). They claim it is unclear which parts of the quoted material was stricken based on the Dead-Man's Act. Contrary to the Hirschfeld Siblings' claims, the record shows the quoted material was stricken *in toto* based on a violation of the Dead-Man's Act. The Dead-Man's Act provides, in pertinent part, the following:

> "In the trial of any action in which any party sues or defends as the
> representative of a deceased person or person under a legal disability, no adverse
> party or person directly interested in the action shall be allowed to testify on his or
> her own behalf to any conversation with the deceased or person under legal
> disability or to any event which took place in the presence of the deceased or
> person under legal disability ***." 735 ILCS 5/8-201 (West 2018).

The purpose of the Dead-Man's Act is to bar only evidence which the decedent could have refuted, which equalizes the position of the parties in regard to the giving of testimony. *State Farm Mutual Automobile Insurance Co. v. Plough*, 2017 IL App (2d) 160307, ¶ 5, 81 N.E.3d 601. The Hirschfeld Siblings assert Christopher's statements in the quoted material was neither

of a conversational quality nor regarding an event occurring in decedent's presence. One of the quoted statements in paragraph 17 was Christopher "had been concerned that [decedent's] behavior seemed more erratic than simply being intoxicated from too much alcohol." The "erratic behavior" decedent exhibited would have been in decedent's presence. The statement in paragraph 7 referring to decedent's request to have Christopher help clean up Mariway Farms would have also been in decedent's presence. Thus, some of the statements in Christopher's affidavit refer to matters that were in decedent's presence. We find the Hirschfeld Siblings have failed to identify which statements in the quoted portions of paragraph 7 and 17 did not violate the Dead-Man's Act. As such, we find the Hirschfeld Siblings have not established error. Regardless, the remainder of paragraph 17 (the portion of paragraph 7 was merely background information) indicated Christopher looked in decedent's medicine cabinet in fall 2005 and observed decedent was taking 10 to 12 different prescriptions from different doctors and obtained from different pharmacies. In asserting they established a question of material fact on their three claims in their will contest, the Hirschfeld Siblings do not even specifically cite the page of the record on which paragraph 17 is located. They do make a general citation to Christopher's affidavit but do not refer to anything regarding decedent's prescription medications. Thus, even if the court did err in finding a violation of the Dead-Man's Act, the material in paragraph 17 of Christopher's affidavit would not have impacted the ultimate ruling on the motion for summary judgment.

¶ 41                                   2. *Elder's May 2004 Letter*

¶ 42          Exhibit No. 12 was a May 24, 2004, letter from Elder, an attorney at Meyer Capel, to Mark Wisniewski, the senior vice-president of BankIllinois, on which there was handwritten notes. It is unclear from the document who made the handwritten notes, when they

were made, and in what context. The circuit court struck the document based on a lack of foundation. In their brief, the Hirschfeld Siblings contend the handwritten notes were made by Wisniewski and note the circuit court ordered them to withdraw their subpoena for his deposition. Thus, they argue the document lacked foundation because of the circuit court's ruling. However, the Hirschfeld Siblings filed exhibit No. 12 in February 2018, which was a year before they subpoenaed Wisniewski. Moreover, Wisniewski is not named in their Rule 191(b) affidavit as a necessary witness requiring additional discovery. Thus, the circuit court is not at fault for the lack of foundation for exhibit No. 12. Accordingly, we find no error with the circuit court striking exhibit No. 12.

¶ 43                    3. *Prenuptial Agreement of Decedent and Executor*

¶ 44          Exhibit No. 4 was the May 26, 1999, prenuptial agreement between decedent and executrix. The Hirschfeld Siblings contend the agreement is relevant because it provided executrix's daughter would receive executrix's entire estate, and the Hirschfeld Siblings would receive decedent's entire estate per the 1997 Will. However, they do not cite the pages of the agreement stating that contention and the 1997 Will is not attached to the document. As noted by the circuit court, paragraph 5 of the prenuptial agreement stated the following:

> "Subject to the provisions herein, each party may make such disposition of his or her property as the case may be by gift, inter vivos trust or will during his or her lifetime as each sees fit and may make gifts for the benefit of each other. Nothing in this agreement shall be construed to prevent a party from accepting gifts or a bequest under a will from the other."

Since the prenuptial agreement allowed decedent and executrix to makes bequests to each other under a will, the asserted inference the inclusion of a bequest to executrix in the August 2006

Will was contrary to decedent's wishes at the time he signed the prenuptial agreement is not a reasonable one. As such, the prenuptial agreement does not suggest defendant's inclusion of executrix in his August 2006 Will was involuntary as asserted by the Hirschfeld Siblings. Thus, we find the circuit court did not error by striking exhibit No. 4.

¶ 45                                              4. *Ryan's Affidavit*

¶ 46         Exhibit No. 2 was Ryan's affidavit, which the circuit court struck in part due to irrelevancy and violations of the Dead-Man's Act. The Hirschfeld Siblings' do not contest the court's findings regarding the Dead-Man's Act, and thus we will not disturb the portions of the affidavit struck based on a violation of the Dead-Man's Act. As to the remaining parts struck solely on irrelevancy, the actions of executrix stated by Ryan occurred in June 2007. The Hirschfeld Siblings simply assert the material at issue shows executrix was trying to prevent them from spending time with decedent outside her presence after learning of decedent's intent to place Mariway Farms in a family LLC, her neglect of the decedent (this part of the affidavit was also struck based on violating the Dead-Man's Act), and her animus towards them. While they set forth what matters the material would address, they do not address the temporal remoteness (10 months after decedent's signing of the August 2006 Will) and fail to cite to the record showing when executrix learned about the family LLC. As such, we find the Hirschfeld Siblings forfeited this argument.

¶ 47                                    5. *Transcript of the January 19, 2016, Order*

¶ 48         Exhibit No. 3 was a transcript of the January 20, 2016, hearing at which the circuit court set forth its ruling on executrix's July 2015 motion to dismiss the Hirschfeld Siblings' will contest under section 2-615 of the Procedure Code (735 ILCS 5/2-615 (West 2014)). In its January 2016 ruling, the court found the Hirschfeld Siblings had pleaded sufficient

facts to proceed with their claims of undue influence and testamentary capacity. The court struck the transcript based on irrelevancy because the court was not ruling on the construction or significance of the trust for the Hirschfeld Siblings mentioned in the August 2006 Will.

¶ 49 A section 2-615 motion to dismiss accepts, for purposes of the motion, all well-pled facts in the complaint are true. *Barber-Colman Co. v. A & K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1068-69, 603 N.E.2d 1215, 1219 (1992). Accordingly, a significant difference between section 2-615 motions and motions for summary judgment is a section 2-615 motion is based on the pleadings rather than on the underlying facts. *Barber-Colman*, 236 Ill. App. 3d at 1068, 603 N.E.2d at 1219. Accordingly, the order on the motion to dismiss is irrelevant to assessing the facts when determining a summary judgment motion, and thus the circuit court properly struck exhibit No. 3.

¶ 50 6. *E-mail Correspondence Between Executrix and the Hirschfeld Siblings*

¶ 51 Exhibit No. 5 was e-mail correspondence between executrix and the Hirschfeld Siblings in August and September 2011 regarding the sale of personal property at decedent's Mariway Farms. Exhibit No. 11 was a July 2013 e-mail from executrix to the Hirschfeld Siblings regarding personal property in conjunction with the sale of the marital home. Such e-mails were five and seven years removed from decedent's execution of the August 2006 Will. The Hirschfeld Siblings have failed to cite any case law suggesting such a long period of time between the events and execution of the will still establishes a mental condition at the time of the execution of the will. Thus, the circuit court properly struck exhibit No. 5.

¶ 52 7. *E-mail Correspondence Between Executrix and Goff*

¶ 53 Exhibit No. 9 was 2011 e-mails between executrix and Goff. The e-mails were related to the sale of personal property at decedent's Mariway Farms. Like with the previous

correspondence, it took place five years after the execution of the will.  For the reasons stated with the previous exhibits, we find the circuit court did not err by striking exhibit No. 9 as irrelevant.

¶ 54                              8. *Correspondence Between Executrix and Aldeen*

¶ 55            Exhibit No. 8 was a May 17, 2007, letter from Aldeen to executrix regarding how to place the contents of a lock box into joint tenancy.  The first page of a legal memorandum was attached.  In asserting the letter was relevant, the Hirschfeld Siblings set forth numerous facts that are not contained in the document itself and do not cite to the appellate record showing the alleged facts.  Accordingly, we find this argument is forfeited.

¶ 56                              9. *Correspondence Between Attorneys*

¶ 57            Exhibit Nos. 6 and 7 were correspondence between the parties' attorneys in September and October 2011.  The Hirschfeld Siblings had requested copies of decedent's (1) power of attorney for health care, (2) power of attorney for property, and (3) estate planning documents.  They also requested unfettered visitation with decedent and to be kept apprised of decedent's health care and medical needs.  Like with other correspondence, these took place more than five years after decedent's execution of the August 2006 Will.  Accordingly, we find the circuit court did not err by striking exhibits Nos. 6 and 7 as irrelevant.

¶ 58                              10. *Correspondence Between Executrix and Burden*

¶ 59            Exhibit No. 13 was three separate facsimile cover sheets from Burden, who worked for Northwestern Mutual Financial Network.  The pages attached to the cover sheets were not included with this exhibit.  The first cover sheet was dated February 27, 2008, and addressed to both decedent and executrix.  It noted the facsimile was regarding three life insurance policies owned by the JCH Irrevocable Trust dated June 2, 1989.  The second cover

sheet was dated February 16, 2009, and addressed to just executrix. It also contained handwritten notes dated in 2011. The third one was dated September 20, 2010, and addressed to just executrix. The Hirschfeld Siblings assert this exhibit demonstrated executrix's interest in and control over decedent's property. The 2008 document without the attachments or some other foundation does not support that assertion as it is addressed to both decedent and executrix. The other two documents do tend to support the Hirschfeld Siblings' assertion but are too remote in time to show executrix was taking the same actions around the time of the execution of the August 2006 Will. Thus, we find the circuit court did not err by striking exhibit No. 13 as irrelevant.

¶ 60    To summarize, this court has not altered the circuit court's ruling on executrix's motion to strike. Thus, the only materials supporting the Hirschfeld Siblings' response to the summary judgment are portions of Christopher's and Ryan's affidavits.

¶ 61                    C. Executrix's Motion for Summary Judgment

¶ 62    Last, the Hirschfeld Siblings argue material issues of fact exist as to all three of the claims raised in their will contest. Executrix contends the court properly granted her summary judgment on all three claims.

¶ 63    A circuit court's ruling on a motion for summary judgment presents a question of law, and thus we apply the *de novo* standard of review. *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22, 957 N.E.2d 876. Section 2-1005(c) of the Procedure Code (735 ILCS 5/2-1005(c) (West 2016)) provides summary judgment is proper when the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "In determining the existence of a genuine issue of material fact, courts must

- 24 -

consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent." *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). If the party moving for summary judgment supplies facts which, if not contradicted, would entitle the party to a judgment in his or her favor as a matter of law, the opposing party cannot rely on the pleadings alone to raise issues of material fact. *Purtill*, 111 Ill. 2d at 240-41, 489 N.E.2d at 871. As such, the facts contained in an affidavit supporting a motion for summary judgment which are not contradicted by a counteraffidavit are admitted and must be taken as true for purposes of the summary judgment motion. *Purtill*, 111 Ill. 2d at 241, 489 N.E.2d at 871-72. Summary judgment is "a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871. "Summary judgment should be denied where a reasonable person could draw competing inferences from undisputed facts." *Smith v. Integrated Management Services, LLC*, 2019 IL App (3d) 180576, ¶ 15, 144 N.E.3d 1254.

¶ 64                              1. *Testamentary Capacity*

¶ 65            Section 4-1 of the Probate Act of 1975 (755 ILCS 5/4-1 (West 2014)) grants every person who is at least 18 years old and is of "sound mind and memory" the power to bequeath by will the real and personal estate which he or she has at the time of his or her death. Accordingly, to prevail in a will contest where the testator is of legal age, the petitioner must show the will in question was the product of an unsound mind or memory. *DeHart v. DeHart*, 2013 IL 114137, ¶ 20, 986 N.E.2d 85. Our supreme court has defined "[t]he standard test of testamentary capacity, *i.e.*, soundness of mind and memory" as " 'the testator must be capable of knowing what his property is, who are the natural objects of his bounty, and also be able to

- 25 -

understand the nature, consequence, and effect of the act of executing a will.' " *DeHart*, 2013 IL 114137, ¶ 20 (quoting *Dowie v. Sutton*, 227 Ill. 183, 196, 81 N.E. 395, 400 (1907)). The absence of any one of the aforementioned requirements indicates a lack of testamentary capacity. *DeHart*, 2013 IL 114137, ¶ 20.

¶ 66        The Hirschfeld Siblings contend two of the decedent's dispositions in his August 2006 Will raise a question as to whether the decedent understood the kind and character of his property and whether he had the ability to form a coherent plan to distribute his property among his heirs according to his stated intentions. They assert decedent in his August 2006 Will (1) attempted to create an impossible life estate and remainder in his home because he held his home in tenancy by the entirety with executrix and (2) either referenced a nonexistent or invalid trust or was confused about the terms of his 1989 irrevocable life insurance trust. In support of their arguments, the Hirschfeld Siblings note a deed recorded on November 1, 2000, and decedent's 1989 irrevocable life insurance trust. The deed is not part of the appellate record, and the Hirschfeld Siblings have included the deed in the appendix to their brief. Executrix contends the deed was not part of the record in the circuit court and has moved to strike the deed from the appendix to the Hirschfeld Siblings' brief. It is well settled the record on appeal cannot be supplemented by attaching documents to a brief or including them in an appendix. *In re Parentage of Melton*, 321 Ill. App. 3d 823, 826, 748 N.E.2d 291, 294 (2001). The Hirschfeld Siblings did not respond to executrix's motion in their reply brief. Accordingly, we grant executrix's motion to strike the deed from the Hirschfeld Siblings' brief. Moreover, executrix notes the 1989 irrevocable life insurance trust was not presented in opposition to the motion for summary judgment. We note the circuit court in its order granting the motion for summary judgment noted the Hirschfeld Siblings "failed to produce the trust document as evidence in

response to the summary judgment motion." Our review of the appellate record shows the trust document is in the record but it is an attachment to executrix's July 2015 motion to dismiss the Hirschfeld Siblings' will contest and the Hirschfeld Siblings' April 2019 petition for citation to recover assets. Thus, we find the circuit court and the executrix are correct the trust document was not raised in opposition to executrix's motion for summary judgment. Without the trust document, the Hirschfeld Siblings have failed to show decedent made an error in the August 2006 Will as to the terms of the trust.

¶ 67       Regarding the deed, executrix did admit during the summary judgment proceedings she and decedent owned the home on Waverly Avenue in tenancy by the entirety. However, we do not find that fact alone shows an error in the August 2006 will. In the first sentence of the provision regarding the home, decedent stated he owned the home on Waverly Drive. It is common vernacular to say one owns his or her home even when the person owns the home with another person in tenancy by the entirety or joint tenancy. As to the remainder of the provision, it sets forth that, if decedent owned the home at his death, then his interest in the home was left to the executrix for life and, upon her death, his interest was to be divided among the Hirschfeld Siblings equally and *per stirpes*. The aforementioned language is a contingency which contemplates the bequest may or may not happen. Since a contingency contemplates the bequest may not happen, the fact decedent did not have sole interest in the home to bequeath at the time he executed the August 2006 Will does not alone show he did not understand the kind and character of his property. Decedent could have had a multitude of reasons for putting in such a contingency regarding the Waverly Avenue home. Without any additional supporting evidence of errors in the August 2006 Will, executrix's evidence of decedent's sound mind and memory is uncontradicted. Accordingly, we find the circuit court did not err by granting

summary judgment in favor of executrix on the Hirschfeld Siblings' claim of lack of testamentary capacity.

¶ 68                    2. *Undue Influence and Fraud*

¶ 69        The Hirschfeld Siblings treat undue influence and fraud the same in their brief and contend the circuit court erred when it ruled they had failed to raise issues of fact regarding those two claims.  Executrix disagrees, contending she is entitled to summary judgment on the claims of undue influence and fraud.

¶ 70        Regarding undue influence, our supreme court has stated the following:

" '[U]ndue influence which will invalidate a will is any improper *** urgency of persuasion whereby the will of a person is over-powered and he is indeed induced to do or forbear an act which he would not do or would do if left to act freely. [Citation.]  To constitute undue influence, the influence must be of such a nature as to destroy the testator's freedom concerning the disposition of his estate and render his will that of another.  [Citations.]

What constitutes undue influence cannot be defined by fixed words and will depend upon the circumstances of each case.  [Citation.]  The exercise of undue influence may be inferred in cases where the power of another has been so exercised upon the mind of the testator as to have induced him to make a devise or confer a benefit contrary to his deliberate judgment and reason.  [Citation.] Proof of undue influence may be wholly circumstantial.  [Citation.]  The influence may be that of a beneficiary or that of a third person which will be imputed to the beneficiary.  [Citations.]  False or misleading representations concerning the character of another may be so connected with the execution of the will that the

- 28 -

allegation that such misrepresentations were made to the testator may present triable fact questions on the issue of undue influence. [Citations.]' " (Internal quotation marks omitted.) *DeHart*, 2013 IL 114137, ¶ 27 (quoting *In re Estate of Hoover*, 155 Ill. 2d 402, 411-12, 615 N.E.2d 736, 740 (1993)).

¶ 71   The Hirschfeld Siblings assert they have raised a presumption of undue influence. "[A] presumption of undue influence will arise under certain circumstances and one such circumstance is where (1) a fiduciary relationship exists between the testator and a person who receives a substantial benefit from the will, (2) the testator is the dependent and the beneficiary the dominant party, (3) the testator reposes trust and confidence in the beneficiary, and (4) the will is prepared by or its preparation procured by such beneficiary." *DeHart*, 2013 IL 114137, ¶ 30. As to the first element, the Hirschfeld Siblings note the durable power of attorney executed by decedent in March 2000, making executrix his power of attorney and creating a fiduciary relationship between executrix and decedent. See *DeHart*, 2013 IL 114137, ¶ 31 (stating a power of attorney gives rise to a fiduciary relationship between the grantor and the grantee as a matter of law). However, our supreme court has agreed " 'the use of the presumption of undue influence must be applied with caution as to marital relationships.' " *DeHart*, 2013 IL 114137, ¶ 33 (quoting *In re Estate of Glogovsek*, 248 Ill. App. 3d 784, 790, 618 N.E.2d 1231, 1237 (1993)). Moreover, as noted in *Glogovsek*, 248 Ill. App. 3d at 794, 618 N.E.2d at 1239, the first prong requires more than a fiduciary relationship between the testator and a person. It also requires the person to receive a substantial benefit under the will compared to other persons who have an equal claim to the testator's bounty. *Glogovsek*, 248 Ill. App. 3d at 794, 618 N.E.2d at 1239. The Hirschfeld Siblings do not address the second part of the first prong. If a decedent

- 29 -

dies without a will and with a surviving spouse and a descendant, one half of the estate goes to the surviving spouse and one-half goes to the descendant. See *DeHart*, 2013 IL 114137, ¶ 35 (citing 755 ILCS 5/2-1(a) (West 2010)). Under the August 2006 Will, decedent sought to divide his estate 51% to executrix and 49% to the Hirschfeld Siblings (each individual to receive 7%). Thus, the August 2006 Will provided for a disposition of decedent's property almost identical to the one provided by statute. We recognize the Hirschfeld Siblings argued in addressing decedent's testamentary capacity the August 2006 Will did not actually give them approximately half due to errors in the will. However, they failed to provide evidence supporting their allegations, and without such evidence, the August 2006 Will does not give executrix a substantial benefit over the Hirschfeld Siblings. Thus, we find the Hirschfeld Siblings have not shown the first prong of the presumption test.

¶ 72    While the Hirschfeld Siblings' failure to show one prong of the presumption test is sufficient to affirm the circuit court's grant of summary judgment in favor of executrix on the claim of undue influence, we note the Hirschfeld Siblings fail to show the other prongs as well. As to the second prong, the portions of Christopher's affidavit cited by the Hirschfeld Siblings were struck by the circuit court in its June 2019 order. Thus, the Hirschfeld Siblings did not present evidence supporting its arguments regarding the second prong. Regarding the third prong, the Hirschfeld Siblings rely solely on the existence of the durable power of attorney but do not address the fact executrix was decedent's spouse. With spouses, the evidence must show the decedent entrusted the management of most of his or her personal and financial affairs to the spouse before a fiduciary relationship could be said to arise as to the entire estate. *Glogovsek*, 248 Ill. App. 3d at 793, 618 N.E.2d at 1238. Executrix presented evidence decedent conducted his own personal and financial affairs around the time of the execution of the August 2006 Will.

Regarding the fourth prong, executrix presented evidence decedent conducted the will signing by himself at the law firm and was the person contacting the law firm to have changes made to his will. She also presented her own affidavit denying she knew about the August 2006 Will. The Hirschfeld Siblings did not provide any evidence the will was prepared or procured by executrix.

¶ 73    Accordingly, we find the circuit court did not err by granting summary judgment in favor of executrix on the Hirschfeld Siblings' claims of undue influence and fraud. Since we have found no errors, we do not address the Hirschfeld Siblings contention related to the cumulative effects of the errors in this case.

¶ 74                                    III. CONCLUSION

¶ 75    For the reasons stated, we affirm the Champaign County circuit court's judgment.

¶ 76    Affirmed.